IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

THOMAS WHITE,

                           Petitioner,          Civil Action No.
                                                9:13-CV-1163 (GLS/DEP)

        v.

SUPERINTENDENT,

                           Respondent.

_____

APPEARANCES:                        OF COUNSEL:

FOR PETITIONER:

THOMAS WHITE, *Pro se*
10-A-2524
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN          LISA E. FLEISCHMANN, ESQ.
New York State Attorney General     Assistant Attorneys General
120 Broadway
New York, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* petitioner Thomas White, a New York State prison inmate, has commenced this proceeding pursuant to 28 U.S.C. § 2254 requesting habeas relief from the court. In his petition, White argues that the guilty plea that led to his conviction was not knowing, voluntary, and intelligent because he received ineffective assistance from his appointed attorney and his plea allocution in state court was insufficient. For the reasons set forth below, I recommend that the petition be denied and dismissed.

I.    <u>BACKGROUND</u>

On June 5, 2009, petitioner was indicted by an Albany County grand jury and charged with kidnapping in the first degree and four counts each of first and second degree assault. <u>Dkt. No. 8 at 87-95</u>. The charges set forth in the indictment related to an incident that occurred on May 28, 2009, when the victim was allegedly abducted and assaulted by petitioner and another individual in an attempt to coerce the victim's brother to return a stolen safe and its contents. *Id.* at 87.

On March 18, 2010, the petitioner, accompanied by an assistant public defender appointed to represent him, appeared before Albany County Court Judge Thomas A. Breslin and entered a plea of guilty to a single count of first degree assault in full satisfaction of the charges against

him. Dkt. No. 8 at 32-40. The plea was entered in exchange for an agreement that White would be sentenced to a determinate term of incarceration of up to twenty-two years, to be followed by a five-year period of post-release supervision. *Id.* at 33. As part of the plea agreement, White waived his right of appeal as well as any claim of a jurisdictional defect.[1] *Id.* Petitioner was subsequently sentenced as a second felony offender to the agreed upon prison term on May 13, 2010. *Id.* at 49-50. At the sentencing, petitioner made no effort to withdraw his guilty plea. *Id.* at 41-52.

With the assistance of new counsel, petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Third Judicial Department. Dkt. No. 8 at 30. In the brief filed by his attorney, petitioner argued only that his sentence was excessive and should be reduced in the interest of justice. *Id.* at 21-29. In a supplemental brief filed on his own behalf, petitioner also argued that (1) he did not receive effective assistance of counsel; (2) his guilty plea was not knowing, voluntary, or intelligent because the court's inquiry was insufficient and his counsel induced him to plead guilty; (3) his waiver of appeal was ineffective; (4) the indictment was duplicitous; (5) the trial court lacked jurisdiction; and (6) the evidence did not

---

[1]    The alleged jurisdictional defect at issue appears to relate to the fact that while the victim's abduction occurred in Albany, some or all of the ensuing assaults occurred in the City of Troy, the County of Rensselaer, as well as the City of Schenectady, County of Schenectady, and at various locations in between. Dkt. No. 8 at 38-39.

support one of the elements of first-degree assault. *Id.* at 98-117. As an exhibit to his supplemental brief, petitioner submitted a copy of a motion to vacate his conviction filed with the trial court pursuant to New York Criminal Procedure Law ("CPL") § 440.10. *Id.* at 116.

White's conviction was affirmed by the Appellate Division on March 28, 2013. *People v. White*, 104 A.D.3d 1056 (3d Dep't 2013). After finding that petitioner "did not effect a valid waiver of his right to appeal," the court nonetheless concluded that his arguments concerning the voluntariness of his plea and the ineffective assistance of his trial counsel were not properly preserved for review by motion for leave to withdraw his plea. *White*, 104 A.D.3d at 1056. The court rejected petitioner's request to invoke New York's rare exception to the preservation rule, concluding that White "made no statements during his plea that were inconsistent with his guilt[.]" *Id.* (citation omitted). The Appellate Division also addressed the merits of petitioner's appeal, concluding that "the plea minutes reflect that [his] plea was knowing, voluntary and intelligent and that he was afforded meaningful representation[.]" *Id.* at 1056-57 (citations omitted). With respect to petitioner's contention that the trial court did not have jurisdiction over him, the Appellate Division found that because, by petitioner's own admission, the victim's abduction occurred in Albany County and he caused serious

physical injury to her in furtherance of a kidnapping, one or more elements

of the crime occurred in Albany County, which rendered that county

appropriate for prosecution of the crime. *Id.* at 1057. Finally, the court

concluded that petitioner's sentence was not unduly harsh or excessive

"given the brutal and senseless nature of the crime" and rejected

petitioner's remaining contentions on the merits. *Id.* Petitioner's application

for leave to appeal to the New York Court of Appeals was denied on July 17,

2013. *People v. White*, 21 N.Y.3d 1021 (2013).

On or about December 4, 2012, prior to the Appellate Division's

decision on his direct appeal, petitioner applied to the trial court for an order

vacating his conviction pursuant to CPL § 440.10. Dkt. No. 8 at 174-212. In

that motion, petitioner requested that his plea be vacated and that the

matter be transferred to Rensselaer County for prosecution, and reiterated

the arguments contained in his *pro se* supplemental brief to the Appellate

Division regarding ineffective assistance of counsel and involuntary plea. *Id.*

The motion to vacate was denied by decision and order issued by Acting

Supreme Court Justice Thomas A. Breslin[2] on January 11, 2013. *Id.* at

---

[2]     According to publicly available sources, Justice Breslin is both an Albany County
Judge and Acting Supreme Court Judge, which explains why he presided over
petitioner's plea and sentencing hearings and rendered a decision with respect to
petitioner's CPL § 440.10 motion in his different capacities. New York State Unified
Court System, Court Administration,
https://www.nycourts.gov/admin/directory/breslin_thomas.shtml (last visited April 25,

237-240. In his decision, Justice Breslin concluded that each of the issues raised in petitioner's motion including the jurisdictional issue could have been raised on appeal. *Id.* at 239. Following receipt of that decision, petitioner applied to the Appellate Division for leave to appeal and for consolidation of his direct appeal with an appeal from the denial of his CPL § 440.10 motion. *Id.* at 241-78. Although no copy of an order is included in the record now before the court, it appears that petitioner's motion was denied by the Appellate Division on April 2, 2013. *See* Dkt. No. 7-1 at 12-13 & n.3.

II.   PROCEDURAL HISTORY

Petitioner commenced this proceeding on September 19, 2013. Dkt. No. 1. Although the petition sets forth three separate grounds for habeas relief, they are all intertwined and aimed at contesting the validity of his guilty plea. *Id.* at 5-6. More specifically, petitioner contends that his plea was invalid because he received ineffective assistance from his trial counsel and his plea allocution was insufficient to support the charge to which he pleaded guilty. *Id.*

Respondent answered White's petition on January 21, 2014, contending that petitioner's arguments are precluded based upon the Appellate Division's reliance on an independent and adequate state

_____

2016).

procedural ground, and in any event, petitioner's three claims lack merit.

Dkt. No. 7-1. Respondent's answer was accompanied by a compilation of the relevant state court records, paginated and indexed for ease of reference. Dkt. No. 8. Although petitioner initially requested an extension of time to file a reply, he subsequently sent the court a letter dated March 17, 2014, indicating that no reply would be forthcoming. Dkt. Nos. 10, 12.

The petition in this matter, which is now ripe for determination, has been forwarded to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Adequate and Independent State Ground

The focus of petitioner's habeas claims is upon his guilty plea and his trial counsel's advice and conduct surrounding that plea. Dkt. No. 1 at 5-6. Specifically, ground one of the petition states that "counsel allowed courts to order [him] to waive [his] 6th Amendment right, which [he] did not answer the courts. Counsel never reject or anything[.]" *Id.* at 5. Petitioner also contends that his "due process rights under the 14th Amendment w[ere] violated [because his] plea was not knowing, voluntary and intelligently entered." *Id.* Lastly, White maintains that the "trial court violated [his] rights

because during allocution [he] didn't say enough facts to support the charge [he] pleaded to." *Id.* at 6. While these contentions constitute the extent of petitioner's arguments contained in his petition, the court has liberally construed the petition and finds plaintiff's claims are all intertwined. Accordingly, liberally construed, I find that petitioner argues that his plea was not knowing, voluntary, and intelligent because (1) his trial counsel was ineffective and (2) he did not allocate sufficient facts at his plea hearing to satisfy all of the elements of the crime to which he pleaded guilty.

Petitioner's arguments regarding the voluntariness of his plea and the effectiveness of the assistance he received from his trial counsel were rejected by the Appellate Division as unpreserved based upon his failure to move for leave to withdraw his plea, as well as on the merits. *White*, 104 A.D.3d at 1056-57. Respondent argues that the state court's procedural ruling with respect to those arguments provides a basis for rejecting petitioner's habeas claims. Dkt. No. 7-1 at 15-18.

As a matter both of comity, and in keeping with the principles of federalism, a federal court ordinarily will not review a federal claim presented in a habeas petition if it has been rejected by the state courts on a ground that is both "independent and adequate[.]" *Coleman v. Thompson*, 501 U.S. 722, 736 (1991); *accord, Brown v. Greiner*, 409 F.3d 523, 532 (2d

Cir. 2005). While a procedural forfeiture is typically the product of a failure to comply with a state's requirements regarding timely presentment of issues to a court, the question of whether a default discerned by a state court is sufficiently adequate and independent to preclude federal habeas review is governed by federal law. *Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006).

When presented with this issue, the court examines both whether the state court's ruling is wholly independent of any federal question presented, and whether the claim has been rejected based upon an adequate ground – that is, whether the rule relied upon by the state court is firmly established and regularly followed. *Downs v. Lape*, 657 F.3d 97, 101-02 (2d Cir. 2011). The habeas court's function is "to determine only whether the state ruling falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct." *Downs*, 657 F.3d at 101 (citing *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011)).

Addressing the issue of adequacy, the Second Circuit has observed that

> a procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question. When a federal court finds that the rule is inadequate under this test the rule should not operate to bar federal review. Nonetheless, the principles of comity that

> drive the doctrine counsel that a federal court that
> deems a state procedural rule inadequate should not
> reach that conclusion lightly or without clear support
> in state law.

*Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (citations and quotation marks omitted); *accord, Monroe*, 433 F.3d at 241. As may be self-evident, a state court determination is sufficiently independent if it is divorced from and bears no relation to the merits of the federal law claim presented. *See Coleman*, 501 U.S. at 729 ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question[.]"). When addressing the question of procedural forfeiture, a court should presume that there is no independent and adequate state ground for a state court decision when the decision "'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion[.]'" *Coleman*, 501 U.S. at 733 (quoting *Mich. v. Long*, 463 U.S. 1032, 1040-41 (1983)); *accord, Brown*, 409 F.3d at 531.

For a federal court to deny habeas review based on the independent and adequate state ground doctrine, it must be clear that the state court actually relied upon the procedural bar as the basis for its disposition of the claim. *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 262 (1991);

*Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000). In a case where both procedural and substantive arguments have been advanced by the parties but no opinion is issued by the state court explaining its rejection of a claim, a federal court may properly assume that the state court based its decision on state procedural grounds absent good reason to believe the state court's silence represents a decision to deny the claim on its merits. *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993). In instances where a state court has expressly found both a failure to preserve the argument for appellate review and alternatively or "in any event" that the argument lacks merit, the procedural bar applies. *Fama*, 235 F.3d at 810 n.4. If there is ambiguity, however, as in "when a state court uses language such as the defendant's remaining contentions are either unpreserved for appellate review or without merit, the validity of the claim is preserved and is subject to federal review." *Fama*, 235 F.3d at 810 (quotation marks and alterations omitted).

In this instance, the Appellate Division determined that petitioner's arguments concerning his plea and the assistance of his trial counsel were not properly preserved, and discerned no basis to invoke the rare exception where review is undertaken notwithstanding the failure to preserve. *White*, 104 A.D.3d at 1056. New York's rule that a defendant must first seek to

withdraw or vacate a guilty plea to preserve appellate review of a claim that the plea was involuntary is an independent and adequate procedural rule that bars federal habeas review. *Antoine v. Ercole*, No. 11-CV-0088, 2013 WL 4647497, at *8 (E.D.N.Y. Aug. 29, 2013) (citing cases).[3] Accordingly, this court's review of those grounds is foreclosed absent a finding of either (1) cause for petitioner's default and actual prejudice, or (2) that a failure to review the claims will result in a fundamental miscarriage of justice.[4] *Coleman*, 501 U.S. at 750; *accord, Brown v. Rivera*, No. 05-CV-1478, 2008 WL 2559372, at *2 (N.D.N.Y. June 23, 2008) (Treece, M.J.).

To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Examples of such external mitigating circumstances can include ineffective assistance of counsel, "a showing that the factual or legal basis for a claim was not

---

[3]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

[4]     Because petitioner in this case does not contend that a failure to grant his request for a writ of habeas corpus would result in a miscarriage of justice, and there is nothing before me to suggest that the exception applies, I have not addressed it in this report. *See Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) ("Actual innocence is not in issue here; so cause and prejudice analysis is the only route to the merits."); *see also Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("The miscarriage of justice exception is concerned with actual . . . innocence.").

reasonably available to counsel, or that some interference by officials made compliance impracticable."[5] *Murray*, 477 U.S. at 488 (quotation marks and citations omitted); *Coleman*, 501 U.S. at 753. When a petitioner has failed to establish adequate cause for his procedural default, the court need not proceed to examine the issue of prejudice because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *accord, Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. March 21, 2006) (McCurn, J.).

Turning first to whether petitioner in this case has established cause, I find that he has not provided any reason for failing to preserve his arguments regarding the voluntariness of his plea and the ineffective assistance of trial counsel. While the petition contains a vague contention with respect to his ineffective-assistance-of-counsel claim, Dkt. No. 1 at 5, petitioner has failed to articulate in his petition, or elsewhere in the state court records before the court, any justification for neglecting to preserve his claims for appeal in state court. Because petitioner has not established

---

[5]     It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).

adequate cause for his failure to move to withdraw his plea prior to filing his appeal in state court, I need not consider whether he has suffered prejudice.[6] *See Stepney*, 760 F.2d at 45 ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [the petitioner] showed prejudice.").

In light of petitioner's failure to establish any reason for excusing his procedural default in this case, I recommend that the court deny petitioner's claims set forth in his petition for a writ of habeas corpus on that ground.

B.    Merits of Petitioner's Claims

Although White is procedurally barred from pursuing the claims set forth in his petition, out of an abundance of caution, I will nonetheless address the merits of his claims.

---

[6]    It is doubtful that petitioner could establish the requisite prejudice in this case. Notwithstanding the waiver of his right to appeal and to challenge the alleged jurisdictional defect, the Appellate Division overlooked those waivers and engaged in a review with respect to both issues, concluding that petitioner's plea was knowing, voluntary and intelligent, and that there was a sufficient basis for the court's jurisdiction to entertain the charges against the petitioner. *White*, 104 A.D.3d at 1056-57. Given the number of charges set forth in the indictment against petitioner, and the potential sentence he faced if convicted on all counts, it is difficult to conclude that petitioner was prejudiced by any ineffective assistance of counsel in connection with his plea agreement.

1.    <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61 (2d Cir. 2007) (Sotomayor, J.). The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 131 S. Ct. at 1398. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not

whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

       2.   <u>Analysis</u>

          a.   <u>Guilty Plea</u>

As noted above, petitioner challenges the constitutionality of his guilty plea, arguing that it was not knowing, voluntary, or intelligent in light of both his trial counsel's alleged ineffective assistance and because he did not "say enough facts to support the charge [he] pleaded to."[7] Dkt. No. 1 at 5-6.

_____

[7]      Again, for the sake of completeness, I have separately addressed the merits of

The standard governing the acceptance of guilty pleas is neither recently evolved nor controversial. "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" (quoting *N.C. v. Alford*, 400 U.S. 25, 31 (1970))). The court may determine whether a defendant's guilty plea was knowing, intelligent, and voluntary by examining the relevant record for whether the defendant (1) was competent to proceed, (2) was made aware of the nature of the charges against him, (3) had a rational and factual understanding of the proceedings against him, and (4) was cognizant of the constitutional protections relinquished by entering a guilty plea. *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004) (citing cases). Although the question of whether a defendant's guilty plea was voluntarily is ultimately a legal one that "merit[s] independent consideration in a federal habeas proceeding," the

---

petitioner's ineffective assistance of counsel claim below in part III.B.2.b. of this report.

"components of voluntariness have been held to constitute, or at least depend on, questions of fact the state court determinations of which are subject to the requirements of [28 U.S.C.] § 2254(d)." *Matusiak v. Kelly*, 786 F.2d 536, 543, 544 (2d Cir. 1986); *accord, Oyague*, 393 F.3d at 104.

In its decision, the Third Department determined that petitioner's plea was knowing, voluntary and intelligent, and the product of meaningful representation. *White*, 104 A.D.3d at 1056-57. That determination is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Before accepting the plea, the trial court ascertained that petitioner was twenty-four years old, understood the English language, and had not consumed medication, drugs, or alcohol within a couple of days. Dkt. No. 8 at 35. The court also determined that petitioner had a full opportunity to consult with his assigned counsel and was satisfied with his attorney's performance. *Id.* at 36. After assuring itself that petitioner understood the rights he was relinquishing by entering his plea, the trial court asked whether petitioner participated in the kidnapping and infliction of the injuries upon the victim, to which petitioner replied in the affirmative. *Id.* at 37. Simply stated, petitioner has cited no basis, nor has the court discerned any, to conclude that White's plea was not entered knowingly, voluntarily, and intelligently.

With respect to petitioner's claim that, during his allocution, he did not "say enough facts to support the charge" to which he pleaded guilty, Dkt. No. 1 at 6, the Second Circuit has held that "due process does not mandate a factual basis inquiry by state courts" to create a valid plea. *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984). A factual basis inquiry is "merely one way of satisfying the constitutional requirement that a plea be voluntary and intelligent." *Willbright*, 745 F.2d at 780. In addition, there is no constitutional requirement that each element of a crime be specifically allocated to at a plea hearing; instead, it is sufficient if the defendant had adequate notice of the charges against him and the plea is voluntary. *See Maltsev v. Albany Cnty. Prob. Dep't*, 303 F. App'x 973 (2d Cir.2008) (finding the petitioner's plea colloquy sufficient to support a finding that his plea was intelligently rendered even where it "lack[ed] a specific reference to the crime's intent element"). As was already discussed, petitioner's plea allocution in this case was constitutionally adequate because, *inter alia*, the trial court assured itself that petitioner participated in the kidnapping and "inflict[ion of] the injuries upon [the victim]" on the date of the incident. Dkt. No. 8 at 67.

For the foregoing reasons, I recommend a finding that the state court's determination that petitioner's plea was knowing, voluntary, and

intelligent was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent and that the second and third grounds of White's petition be rejected.

<blockquote>b.   Ineffective Assistance of Counsel</blockquote>

In the first ground of White's petition, he challenges the effectiveness of his assigned attorney. Dkt. No. 1 at 5. Under the well-established standard governing ineffective assistance of counsel claims,

> the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord, Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007).

To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *accord, Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015). An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort made to "eliminate the distorting effects of

hindsight[.]" *Strickland*, 466 U.S. at 689; *see also Rivas*, 780 F.3d at 547 (noting the court's "scrutiny of counsel's performance must be 'highly deferential'" (quoting *Strickland*, 466 U.S. at 689)).

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Murden*, 497 F.3d at 198 ("Under *Strickland*, a defendant must show that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted)).

In this case, despite finding that petitioner's ineffective assistance claim was not properly presented, the Appellate Division went on to address the merits of the claim, concluding that he received "meaningful representation." *White*, 104 A.D.3d at 1056-57. This court's role is therefore limited to determining whether the state court's determination was contrary to or an unreasonable application of Supreme Court precedent.

The petition only suggests that petitioner's trial counsel was inadequate because "[c]ounsel allowed courts to order [him] to waive [his] 6th Amendment right, which [he] did not answer the courts. Counsel never

reject or anything[.]" Dkt. No. 1 at 5. The basis of this contention is difficult to discern without further allegations from petitioner. To the extent petitioner intended to argue that his attorney's conduct prior to the entry of his guilty plea was inadequate, it is well-established that such claims are precluded based upon the entry of a plea. *See United States v. Torres*, 129 F.3d 710, 715-16 (2d Cir. 1997) ("A defendant who 'pleads guilty unconditionally while represented by counsel may not assert independent claims relating to [the deprivation of constitutional rights that occurred] prior to the entry of the guilty plea.'" (quoting *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (alteration in original)).

To the extent this claim could be centered upon the guilty plea and the advice rendered by counsel leading up to the plea, there is no basis to conclude that petitioner did not receive constitutionally adequate representation. Given the extent of the punishment that petitioner was facing if convicted on all counts, it appears that the plea bargain negotiated by his counsel – permitting him to enter a plea to a single count of the indictment in exchange for a twenty-two year prison sentence – was extremely favorable. I note, moreover, that, when asked during his plea colloquy whether he was satisfied with the representation received from his counsel, petitioner stated that he was. Dkt. No. 8 at 63.

After carefully reviewing the record, I recommend a finding that the Appellate Division's conclusion that petitioner received adequate assistance of counsel was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

C.    Certificate of Appealability

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013).

A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are

adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).[8]

In this instance, I conclude that the petitioner has not made a substantial showing of the denial of a constitutional right and therefore recommend against the issuance of a COA.

IV.    SUMMARY AND RECOMMENDATION

The petition in this matter, which does not provide a great deal of detail concerning the claims being raised, contains three grounds, all of which have been procedurally forfeited based upon a state appellate court's rejection of those claims on an adequate and independent state law ground. In any event, applying the requisite deferential standard of review prescribed under the AEDPA, I conclude that the three grounds cited in the petition lack merit.

Accordingly, it is hereby

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects; and it is further

---

[8]    A similar standard applies when a COA is sought in a case such as this to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

RECOMMENDED that, based upon my finding that White has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2), a certificate of appealability not issue with respect to any of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     April 27, 2016
           Syracuse, New York

2013 WL 4647497
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Ted ANTOINE, Petitioner,

v.

Superintendent Robert ERCOLE [1], Respondent.

No. 11–CV–00088 (PKC).
|
Aug. 29, 2013.

**Attorneys and Law Firms**

Ted Antoine, Ossining, NY, pro se.

Solomon Neubort, Brooklyn, NY, for Respondent.


### *MEMORANDUM & ORDER*

PAMELA K. CHEN, District Judge.

**\*1** Pending before the Court is Petitioner Ted Antoine's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2003, Antoine pled guilty to one count of second-degree murder. Although Antoine's *pro se* petition is somewhat unclear with respect to the grounds upon which he seeks relief, the Court construes Antoine's petition to set forth three grounds for relief: (1) Antoine's guilty plea was not knowing and voluntary because it was induced by misleading and coercive statements made by the trial court; (2) Antoine's counsel was ineffective for advising him to plead guilty; and (3) Antoine's motion pursuant to New York Criminal Procedure Law § 440.10 to vacate his conviction (the "440 Motion") was improperly denied without a hearing. (Dkt. 1 at ECF 5–6 & accompanying exhibits.) [2] For the reasons stated below, Antoine's application is denied in its entirety.


### *BACKGROUND*

*A. Charged Conduct*
On the evening of October 3, 2002, 17–year–old Antoine punctured the tires of his mother's former boyfriend's car, which was parked outside the ex-boyfriend's house. Antoine wanted to prevent the ex-boyfriend, Ronald Guerrier, from

leaving his house in the morning. (Dkt. 1 at ECF 5.) [3] When Guerrier emerged from his house the next morning, Antoine approached Guerrier with a gun and shot him once in the back in front of two eyewitnesses, including Guerrier's young son. (Dkt. 3–2 at ECF 6, 67.) Guerrier died as a result of the gunshot wound. (Dkt. 3 at 2.) Following his arrest, Antoine confessed to killing Guerrier in both a written statement and a videotaped confession. (Dkt. 3 at ECF 10.) Antoine explained in his written statement that he did it "because of all the anger I had for [Guerrier] over the years from all the abuse[.]" [4] (Dkt. 3–3 at ECF 25.) In his statement, Antoine set forth a history of abuse at the hands of Guerrier after Antoine's mother died and Antoine and his brother were left in Guerrier's care. (Dkt. 3–2 at ECF 28–30.) Antoine also explained in his written statement that the abuse had ceased when he turned 13, four years before the shooting. (Dkt. 3–2 at ECF 29.)

Antoine was charged with two counts of Murder in the Second Degree (N.Y. Penal Law § 125.25[1], [2] ) and other related charges. (Dkt. 3 at 2.)

*B. Pretrial Hearings*
On October 16, 2003, the trial court conducted a lengthy suppression hearing regarding the admissibility of Antoine's post-arrest statements. The next day, on October 17, the trial court denied Antoine's suppression motion, finding that "the statement was clearly voluntarily given[.]" The court ruled that the confessions would be admissible at trial. (Dkt. 3–4 at ECF 52.) After ruling on the suppression motion, the trial court began discussing with Antoine the possibility of a guilty plea: [5]

> THE COURT: The jury is going to hear your videotape. They are also going to have an opportunity to read your handwritten statement and they are going to hear testimony from two witnesses who say you're the person who committed the crime. I don't know if the jury is going to believe it or not believe it. If they believe that and they accept that they have no choice but to find you guilty. I don't know what your wishes are. You could certainly have a trial. I want to ask the District Attorney to approach and address attorney.

**\*2** (Discussion held at the bench, off the record.)

> THE COURT: Mr. Antoine, I'm prepared to offer you the least the law could give you for the crime of this nature,

which is fifteen years to life. That is the only offer I could make you.

The District Attorney, he tells me that he is not going to reduce the charges. If you want to take that plea I'll give it to you only if you admit you did it. *If you don't want to admit you did it, that is okay, the jury will hear the evidence and they can decide. I don't know what they are going to decide; I'm not the jury. You'll get a fair trial here.*

On the other hand, it's a pretty strong case against you. I don't know what is going to come out at the trial. I could at the end sentence you to fifteen to life. I could hear things at the end which make[ ] me think the story is not true, you had another reason for being angry at your stepfather, not because he was physically abusing you or beating you up or your little brother, I don't know. If I find that to be the case I won't be as sympathetic to you as I would now. It's up to you.

I want to give you the opportunity before we bring the jury in to make a decision. Your lawyer believes it's in your best interest to plead guilty. I understand why he does. I'm sure he will do the best he can. He has a hard problem, he has a statement and your voice on the videotape. He didn't put your voice there. He didn't tell you to go there and say all those things.

It's very hard to persuade a jury it's not true. It's difficult for me. I can't get into your head. I don't know what happened or why you did this or if you did it, but if you want to take a plea and if you want to admit that you shot him I will promise you a sentence of fifteen years to life.

I've got to be convinced you're doing it because you are guilty. You have to decide what to do. Your lawyer has a very hard job here because of your video.

Do you understand what I'm saying to you?

THE DEFENDANT: Yes.

THE COURT: *Do you want to talk to your lawyer for a few minutes?* What do you want me to do? Do you want me to send for the panel? Well, they are on their way up.

THE DEFENDANT: *I want to talk to my lawyer first.*

(Short pause in the proceedings.)

MR. MARTIN: Judge, I had a conversation with my client. He has expressed some concerns that he is hesitant to take the plea because he didn't do it.

THE COURT: *Okay, that is the end of that.*

MR. MARTIN: Is that correct?

THE DEFENDANT: Yes.

THE COURT: *That is the end of it.*

(Dkt. 3–4 at ECF 52–55) (emphases added).[6] The judge reminded Antoine that his videotaped confession would be admitted at trial and that it would be "difficult to prove to the jury, to establish to the jury's satisfaction that that statement wasn't you or you were lying when you made the statement." (Dkt. 3–4 at ECF 55.)

The judge then turned to discussing how the trial would proceed. She asked defense counsel whether Antoine intended to exercise his right to be present during sidebar discussions between potential jurors and the judge during jury selection. (Dkt. 3–4 at ECF 55–56.) In the midst of this discussion, Antoine interrupted the judge to request a conference with counsel, which the court permitted. (Dkt. 3–4 at ECF 56.) Following the conference, Antoine's counsel asked to speak with the judge. (Dkt 3–4 at ECF 56 .) Immediately after the court's conference with Antoine's counsel, the court again admonished Antoine:

**\*3** THE COURT: Mr. Antoine, I want you to understand something.

*I will not accept a plea from you unless you tell me that you did it. Now, for whatever reason you seem to be saying that you didn't do it and that is what trials are all about. I'm not going to accept the plea based on some other thing that you're willing to say you did it because you're protecting someone else, anything like that. I'm not willing to accept that plea.*

The evidence here is that you did it. The evidence consists of the testimony by your stepbrother and by another witness who says she saw it and by your three statements. That is a lot of evidence.

So I certainly am not going to accept a plea that says you didn't do it, but you're pleading guilty because you want to protect somebody else.

*I would like to you to just take a moment to decide. If you want to talk to your lawyer a few more minutes, okay. Otherwise, I have a jury waiting out in the hall and we will get started. This is really your last chance.*

If you committed this crime and if you want to plead guilty, get the minimum sentence the law allows, I will give it to you. If you don't want to plead guilty we will stop all this discussion, we will bring the jury in, we will select a jury and see what happens at the trial and how I feel after the trial, if you're convicted, and see what your sentence will be. Depends on what I find out about the trial. Right now I'm basing my decision on what you said, your video. That is why I'm giving you the minimum.

The District Attorney thinks maybe that is not all together true. I don't know. I am basing it on that because I haven't heard anything else.

*If you want to take a plea and get a promise of fifteen years you could do that. If you want to take a chance do that too. Make up your mind. If you want to plead guilty you'll have to tell me what you did. It's up to you. Want to talk to your lawyer about it, whatever you want to do?*

I need to move on. I have people standing out in the hallway. There are seventy people out there waiting to be questioned whether they could be jurors in this case. We need to keep going. If you want to take the plea this is the time.

THE DEFENDANT: *I want to speak to my lawyer.*

THE COURT: *Go ahead.*

(Short pause in the proceedings.)

> THE DEFENDANT: *I would like to say that I did it.*

(Dkt. 3–4 at ECF 56–58) (emphases added).

The court confirmed that Antoine indeed wanted to admit that he committed the crime (Dkt. 3–4 at ECF 59), then advised Antoine of his rights. (Dkt. 3–4 at ECF 59–63.) The court established that Antoine was voluntarily waiving his right to a trial and that no one had threatened or influenced him to give up that right (Dkt. 3–4 at ECF 61), that he had been advised by his attorney, understood that the court would give him a fair trial should he choose to proceed to trial, and that the jury

would have to find him guilty beyond a reasonable doubt at trial. (Dkt. 3–4 at ECF 60.)

**\*4** Antoine then allocuted as follows:

THE COURT: If you want me to accept the plea and give you the promised sentence of fifteen years to life then you have to tell me about the crime you committed. What happened?

THE DEFENDANT: I came up to my stepfather and shot him.

THE COURT: You came up to him and what?

THE DEFENDANT: I shot him. THE COURT: You killed him? THE DEFENDANT: Yes.

THE COURT: Did you intend to kill him?

THE DEFENDANT: No.

THE COURT: What did you do? You pulled the trigger?

THE DEFENDANT: Yes.

THE COURT: *You understand pulling the trigger when somebody is at close range is what we call depraved indifference murder.* In other words, a reasonable person wouldn't do that under that kind of circumstances do you understand that?

THE DEFENDANT: Yes.

THE COURT: So even if you didn't intend to do it the way you came out, you acted under circumstances that would show that you didn't obey the common laws of decency or the common laws of cautious behavior[,] do you understand?

THE DEFENDANT: Yes. THE COURT: Is that true? THE DEFENDANT: Yes. THE COURT: Where did this happen?

THE DEFENDANT: Avenue D.

THE COURT: And who was the person you killed?

THE DEFENDANT: Reynold Guerrier.

THE COURT: What was he to you?

THE DEFENDANT: My younger brother's father.

THE COURT: Was he your stepfather?

THE DEFENDANT: No.

THE COURT: He was not your stepfather?

THE DEFENDANT: No. He didn't get married to my mother.

THE COURT: I beg your pardon?

THE DEFENDANT: He didn't get married to my mother.

THE COURT: Mr. Hale, anything else you want to ask?

MR. HALE: No. That is fine, Judge.

THE COURT: We are going to adjourn this case and the Probation Department is going to interview you.

(Dkt. 3–4 at ECF 61–63) (emphasis added).

The judge concluded the hearing by stating that she would sentence Antoine to the promised sentence of 15 years to life unless the probation report reflected something the judge did not then know that would merit a lengthier sentence. (Dkt. 3–4 at ECF 63.)

*C. Sentencing*
The court sentenced Antoine on November 7, 2003. (Dkt. 3–4 at ECF 66–68.) The court noted that it was imposing the minimum sentence in part to avoid the need for Guerrier's young son, who witnessed the killing, to testify at trial. (Dkt. 3–4 at ECF 67.) The court provided Antoine an opportunity to make a statement regarding his sentence, which he declined, and the court formally imposed an indeterminate sentence of 15 years to life for murder in the second degree. (Dkt. 3–4 at ECF 67.) The court then confirmed that Antoine was not waiving his appellate rights and advised Antoine that he had thirty days to appeal, and if he could not afford an attorney to prosecute that appeal, one would be appointed for him. (Dkt. 3–4 at 67–68.)

*D. Appeal*
Antoine appealed the judgment of conviction to the Appellate Division, Second Department, on the basis that his guilty plea was not knowing and voluntary because the trial court had coerced Antoine into accepting the guilty plea, and had misled him regarding the strength of the state's evidence. (Dkt. 3–2 at ECF 2, ECF 13.) Antoine argued, *inter alia,* that the court

misrepresented the nature of the case to exclude the issue of Antoine's mens rea at the time of the killing (Dkt. 3–2 at ECF 13), that the court "kept pushing" Antoine to plead guilty even after he "made clear" that he did not wish to plead guilty (Dkt. 3–2 at ECF 14), and that the court failed to advise Antoine of all of the constitutional rights he would be waiving by not seeking trial, (Dkt. 3–2 at ECF 20.)

**\*5** The Appellate Division affirmed the judgment of conviction on February 10, 2009. *People v. Antoine,* 59 A.D.3d 560, 872 N.Y.S.2d 283 (2d Dep't 2009). The Appellate Division held that Antoine's claim that his plea was not knowing and voluntary was not preserved for appellate review because Antoine had not sought to withdraw or vacate his plea on that basis. The Appellate Division declined to exercise its "interest of justice" jurisdiction to review the claim. *Id.* The court further held that Antoine's "claim that his plea and waiver were not intelligently, knowingly, and voluntarily made because the court failed to specifically enumerate all of the rights to which he was entitled is without merit." *Id.* (citing cases). The court also found that Antoine's challenge regarding his allocution was unpreserved, but in any event that the allocution was sufficient with respect to the depraved indifference murder charge. *Id.* The court found that any other claim challenging the sufficiency of the allocution, the waiver of rights, or that the circumstances surrounding his shooting of the victim did not constitute depraved indifference murder either were not preserved for review or were forfeited entirely by Antoine's plea of guilty. *Id.; see People v. Thomas,* 53 N.Y.2d 338, 343 n. 2, 441 N.Y.S.2d 650, 424 N.E.2d 537 (1981) ("Forfeiture [of a claim] occurs by operation of law as a consequence of a guilty plea, with respect to the issues which as a matter of policy the law does not permit to survive such a plea.").

The New York Court of Appeals denied leave to appeal on May 11, 2009. *People v. Antoine,* 12 N.Y.3d 851, 881 N.Y.S.2d 662, 909 N.E.2d 585 (2009). Antoine's conviction became final 90 days later on August 9, 2009, when time expired for Antoine to seek a writ of certiorari from the United States Supreme Court. *See Williams v. Artuz,* 237 F.3d 147, 150 (2d Cir.2001) ("[A] petitioner's conviction becomes final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expire[s].") (internal quotations omitted).

*E. Post–Conviction Collateral Attack*
Prior to the conclusion of his direct appeal and his conviction becoming final, on October 21, 2008, Antoine filed a motion

pursuant to New York Criminal Procedure Law § 440.10 to vacate the judgment of conviction (the "440 Motion"). (*See* Dkt. 3–2 at ECF 55, 70 .) Antoine sought vacatur on the basis that his trial counsel was ineffective for advising him to plead guilty to a "coercive" plea, for counsel's own conduct in "coercing" Antoine to plead guilty, and for counsel's failure to request a charge of manslaughter. (Dkt. 3–3 at ECF 45–46.)

By order and opinion dated May 22, 2009, the Supreme Court of New York denied Antoine's 440 Motion. (Dkt. 3–3 at ECF 24–42.) In a lengthy opinion, the court held that Antoine already had sought relief on all but one of the grounds on direct appeal, and therefore those claims were barred from collateral review. (Dkt. 3–3 at ECF 32) (citing N.Y.C.P.L. § 440.10(2)(a)). The court, however, addressed Antoine's ineffective assistance of counsel claim and denied it on the merits. (Dkt. 3–3 at ECF 32–42.) The court found that Antoine's counsel provided him meaningful representation and had legitimate strategic reasons for advising Antoine "that he would be convicted of second degree murder after trial if the jury credited his statements and the eyewitness testimony." (Dkt. 3–3 at ECF 38.) The court concluded that, "[i]ndeed, in light of the overwhelming evidence against [Antoine] and the plea offer made by the court, the minimum sentence available under law, this Court finds that counsel provided the defendant with meaningful representation by advising him to accept the trial court's offer." (Dkt. 3–3 at ECF 38–39 (citing *People v. Lewis,* 116 A.D.2d 778, 497 N.Y.S.2d 297 (3d Dep't) (1986). The court also found that what Antoine characterized as his counsel's "coercion" to accept the court's plea offer "amounted to nothing more than the attorney's fulfillment of his obligation to render appropriate advice concerning the strength of the prosecution's case." (Dkt. 3–3 at ECF 39–40) (quoting *People v. Cross,* 262 A.D.2d 223, 695 N.Y.S.2d 3 (1st Dep't 1999)).

**\*6** The Appellate Division denied Antoine leave to appeal from the denial of his 440 Motion on January 5, 2010. (Dkt. 1 at ECF 3; Dkt. 3 at 11.)

*F. The Instant Petition*
Antoine timely filed the instant petition on January 4, 2011, which was one day before the expiration of AEDPA's one-year limitation period. *See* 28 U.S.C. § 2244. (Dkt.1.) As the Court construes Antoine's petition, Antoine challenges his conviction on the grounds that: (1) his guilty plea was not knowing and voluntary because it was induced by misleading and coercive statements by the trial court; (2) Antoine's counsel was ineffective for advising him to plead

guilty; and (3) the Supreme Court improperly denied his 440 Motion without conducting a hearing. (Dkt. 1 at ECF 5–6 & accompanying exhibits.)

*G. Motion to Stay to Exhaust State Remedies*
More than a year after submitting this petition, by letter dated June 26, 2012, Antoine sought a stay of this habeas proceeding to apply for a writ of *coram nobis* from the Appellate Division, in order to exhaust his state law remedies on his ineffective assistance of appellate counsel claim, which Antoine had not previously asserted. (Dkt.4.) [7] By order dated October 22, 2012, Judge Dora L. Irizarry denied Antoine's request. (Dkt.6.) Judge Irizarry found that Antoine had not established the "good cause" required to excuse a petitioner's failure to first exhaust state law claims before seeking habeas relief. (Dkt. 6 at 2.) Judge Irizarry found that the lack of good cause was sufficient to prevent her from granting the stay. (Dkt. 6 at 3.)

## DISCUSSION

*I. Standard of Review under* 28 U.S.C. § 2254
Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits' when 'it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.' " *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir.2002) (quoting *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001)).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.' " *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir.2005) (quoting *Kennaugh v. Miller,* 289 F.3d 36, 42 (2d Cir.2002)). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150

L.Ed.2d 9 (2001) (internal quotation marks and citations omitted). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotation marks and citation omitted).

**\*7** The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo.*' " *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir.2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir.2006)).

## II. Exhaustion

Antoine has properly exhausted the claims in his habeas petition relating to the voluntariness of his guilty plea and the performance of his trial counsel.[8]

## III. Proffered Grounds for Habeas Relief

### A. Knowing and Voluntary Guilty Plea

The central focus of Antoine's petition is that the trial court "coerced" him into pleading guilty, and therefore his guilty plea was not "knowing" and "voluntary" in violation of his right to due process. The Appellate Division held that Antoine's claim was not preserved because he had not moved to withdraw his plea on that basis. *People v. Antoine,* 59 A.D.3d 560, 872 N.Y.S.2d 283 (2d Dep't 2009) (citing *People v. Clarke,* 93 N.Y.2d 904, 906, 690 N.Y.S.2d 501, 712 N.E.2d 668 (1999); *People v. Perez,* 51 A.D.3d 1043, 861 N.Y.S.2d 63 (2d Dep't 2008); *People v. Scoca,* 38 A.D.3d 801, 832 N.Y.S.2d 604 (2d Dep't 2007)).

### 1. Adequate and Independent State Procedural Ground

It is well-settled that a petitioner's federal claim may be procedurally barred from federal habeas review if the state court resolved the issue on an "adequate and independent" state procedural ground. *See Coleman v. Thompson,* 501 U.S. 722, 729–33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Valesquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990). A procedural rule is considered adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 261–62, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (internal quotations omitted). Here, the Appellate Division's determination that Antoine's claim about the alleged involuntariness of his guilty plea was procedurally barred meets those requirements, and constitutes an adequate and independent state procedural ground for resolution of the issue in state court.[9]

**\*8** First, a state procedural ground is "adequate," if the court relied on a state rule that was "firmly established and regularly followed" in the state's courts at the time of the decision. *Coleman,* 501 U.S. at 729–33. Here, the Appellate Division relied on New York's rule that a defendant must first seek to withdraw or vacate a guilty plea to preserve appellate review, which Antoine did not do. *See Antoine,* 59 A.D.3d at 560, 872 N.Y.S.2d 283. New York courts long have relied on the preservation requirement to deny challenges to the voluntariness of guilty pleas. *See, e.g., People v. Clarke,* 93 N.Y.2d 904, 906, 690 N.Y.S.2d 501, 712 N.E.2d 668 (1999); *People v. Lopez,* 71 N.Y.2d 662, 665, 529 N.Y.S.2d 465, 525 N.E.2d 5 (1988). Thus, it is clear that at the time of the Appellate Division's affirmance of Antoine's conviction the preservation requirement was "firmly established and regularly followed" by New York courts. *See, e.g., Richardson v. Greene,* 497 F.3d 212, 218 (2d Cir.2007) ("application of the state's preservation rule is adequate-*i.e.,* firmly established and regularly followed"); *see also Swanton v. Graham,* 07–CV–4113(JFB), 2009 WL 1406969, at \*7 n. 6 (E.D.N.Y. May 19, 2009) (citing *Lawreth v. Conway,* 493 F.Supp.2d 662, 668–69 (W.D.N.Y.2007) (finding claim barred because in "New York, the firmly established and regularly followed rule for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to vacate the

judgment of conviction") (internal citations omitted)). Thus, the first prong of the test set forth in *Coleman* is satisfied.

Second, the Appellate Division's ruling that Antoine's claim was unpreserved for appellate review was "independent" because the Appellate Division expressly relied on the state preservation rule in denying Antoine's appeal. *See Antoine, 59 A.D.3d at 560, 872 N.Y.S.2d 283.* ("The defendant's contention that his plea of guilty was not voluntary because it was coerced is unpreserved for appellate review since he did not move to withdraw his plea on that basis.") (citing New York cases). Thus, the second prong of the *Coleman* test is satisfied.

Because the Appellate Division's denial of Antoine's challenge to the voluntariness of his guilty plea constitutes an "adequate and independent state" procedural ground, federal habeas review is foreclosed. [10] Notwithstanding Antoine's failure to preserve his voluntariness claim, the Court can still review the merits of his claim if Antoine demonstrates both cause for the failure to preserve his claim and prejudice resulting therefrom, or if he demonstrates that the failure to consider the claim would result in a miscarriage of justice. *See Coleman, 501 U.S. at 750.*

Antoine does not attempt to explain his failure to seek to withdraw or vacate his guilty plea and therefore has failed to demonstrate cause or prejudice. [11] Antoine also does not set forth any basis, such as actual innocence, to conclude that a miscarriage of justice would occur were the Court not to review his claim on the merits. *See St. Helen v. Senkowski, 374 F.3d 181, 183–184 (2004)* (citing *Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)).* Therefore, there is no good cause to excuse Antoine's failure to preserve his claim of an involuntary guilty plea, and the Court therefore is barred from reaching the merits of this claim.

## 2. Merits of Antoine's Voluntariness Claim

**\*9** However, were the Court permitted to address the merits of Antoine's involuntariness claim, it would fail on the merits. The record in this case demonstrates that Antoine's guilty plea was knowingly, intelligently, and voluntarily given following the colloquy between the trial court and Antoine, and based upon his trial counsel's competent and reasonable advice. During the plea proceedings, it was proper for the trial judge to explore with Antoine the strength of the People's case, the potential sentence to which Antoine was exposed, and the

favorableness of the plea bargain. *See People v. Gonzalez, 5 A.D.3d 168, 168–69, 772 N.Y.S.2d 520 (1 st Dep't 2004).* It was not coercive for the trial court to do so, particularly given that Antoine was represented by able counsel, with whom Antoine conferred multiple times during the plea hearing. [12]

Antoine points to the following exchange as evidence that the trial court coerced him to plead guilty after Antoine rejected the court's plea offer:

> THE COURT: I've got to be convinced you're doing it because you are guilty. You have to decide what to do. Your lawyer has a very hard job here because of your video. Do you understand what I'm saying to you?

> THE DEFENDANT: Yes.

> THE COURT: Do you want to talk to your lawyer for a few minutes? What do you want me to do? Do you want me to send for the panel? Well, they are on their way up.

> THE DEFENDANT: I want to talk to my lawyer first.

(Short pause in the proceedings.)

> MR. MARTIN: Judge, I had a conversation with my client. He has expressed some concerns that he is hesitant to take the plea because he didn't do it.

> THE COURT: *Okay, that is the end of that.*

> MR. MARTIN: *Is that correct?*

> THE DEFENDANT: *Yes.*

> THE COURT: *That is the end of it.* The video we saw yesterday will be shown to this jury.

> THE DEFENDANT: Yes.

> THE COURT: That will say very clearly that you did do it and why you did do it. If you want to go to trial under those circumstances you can, but it's going to be difficult to prove to the jury, to establish to the jury's satisfaction that that statement wasn't you or you were lying when you made the statement. I don't know exactly what you think you're going to be saying to the jury that is going to persuade them. It's up to you. I'm not going to let you take a plea unless you'll admit to me you shot him and killed him.

> MR. MARTIN: Do you understand?

THE DEFENDANT: Yes.

THE COURT: You don't want to do that? What is your client's decision on Antommarchi? [13]

MR. MARTIN: He indicated he waived his Antommarchi rights.

THE COURT: Do you understand what that means? Your lawyer will come up to the bench if a juror wants to tell us something and he will come back and tell you what the person said. So you'll hear about everything, but you won't be up here; do you understand that?

THE DEFENDANT: Yeah.

(Dkt. 3–4 at ECF 54–56) (emphases added).

**\*10** However, this excerpt does not capture the entire exchange, which continued:

THE COURT: What?

THE DEFENDANT: Yeah.

THE COURT: That is okay with you? THE DEFENDANT: Yeah.

THE COURT: I have to hear you. THE DEFENDANT: Yes.

THE COURT: Is that all right with you? THE DEFENDANT: Yes.

*Can I ask my lawyer something?*

THE COURT: *You can always talk to your lawyer.*

(Short pause in the proceedings.)

MR. MARTIN: Can we have two minutes before the panel comes in?

THE COURT: Yes. They are outside.

(Short pause in the proceedings.)

(Dkt. 3–4 at ECF 56) (emphases added).
After conferring with Antoine, defense counsel approached the bench to confer with the court, after which the court

explained to Antoine, in substance, that she could only accept his plea if he actually committed the crime and was not seeking to protect someone else. (Dkt. 3–4 at ECF 56–57.) After the court further explained Antoine's options, he took another break to confer with his counsel. (Dkt. 3–4 at ECF 58.) Thereafter, Antoine informed the court, "I would like to say that I did it." *Id.*

Thus, contrary to Antoine's contention, neither the trial court nor his counsel coerced him into pleading guilty. Rather, after the court advised Antoine of the potential consequences of going to trial, including the possibility of a higher sentence, and after Antoine conferred multiple times with his attorney, Antoine decided to plead guilty and spontaneously interrupted the proceeding as the court was discussing the conduct of the trial.

The trial judge's actions were not improper. The court was entitled to explore the possibility of Antoine's pleading guilty, including the potential consequences of going to trial, and doing so was not coercive. *See People v. Gonzalez,* 5 A.D.3d 168, 772 N.Y.S.2d 520 (1st Dep't 2004); *Desrosiers v. Phillips,* 05–CV–2941(CBA)(JMA), 2006 WL 2092481, at * 10 (E.D.N.Y.2006) ("Under New York law, a trial judge is permitted to participate in plea negotiations with criminal defendants and may even form opinions about petitioner's likely guilt.") (citing *McMahon v. Hodges,* 382 F.3d 284, 289 n. 5 (2d Cir.2004) (citations and quotation marks omitted)); *People v. Crafton,* 159 A.D.2d 271, 271–272, 552 N.Y.S.2d 273 (1st Dep't 1990) (finding no coercion where the trial court "impress[ed] upon defendant the strength of the People's case, the potential sentence to which defendant was exposed under the indictment, and the favorableness of the plea bargain, [and] reiterated throughout the colloquy that the decision to either plead guilty or go to trial remained with the defendant"). Moreover, Antoine was assisted by able counsel throughout the colloquy and several times conferred privately with his counsel. Accordingly, Antoine's claim for habeas relief based on the alleged involuntariness of his guilty plea is denied. [14]

*IV. Ineffective Assistance of Counsel*

a. *Legal Standard*

**\*11** Antoine bears the burden of persuasion to demonstrate that his trial counsel's performance was so inadequate as to violate the Sixth Amendment right to assistance of counsel. *See Strickland v. Washington,* 466 U.S. 688, 696 (1981). To prevail, Antoine must show both that (1)

"counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88.

The first prong requires a showing that counsel's performance was deficient. Constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 690). The Court examines the reasonableness of counsel's actions under all the circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319 (quoting *Rompilla v. Beard,* 545 U.S. 374, 389, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)).

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A "reasonable probability" means that the errors were of a magnitude such that it "undermines confidence in outcome" of the proceeding. *Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 694). In the context of a guilty plea, in order to satisfy the "prejudice" prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). A habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin,* 366 F.3d 95, 100 (2d Cir.2004).

AEDPA requires federal courts on habeas review to grant state courts substantial "deference and latitude" when considering an ineffective assistance of counsel claim. *Harrington v. Richter,* ––– U.S. ––––, ––––, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011). Indeed, review of a state court's rejection of an ineffective assistance claim is "doubly deferential" and is subject to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Knowles v. Mirzayance,* 556 U.S. 111, 123, 124, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

To obtain federal habeas relief on a claim of ineffective assistance that previously was denied by a state court either on direct appeal or through collateral attack, Antoine must do more than convince the Court that, in its independent judgment, the state court incorrectly applied the standard for ineffective assistance of counsel set forth in *Strickland. Bell v. Cone,* 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor,* 529 U.S. 362, 365, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Rather, Antoine must demonstrate that the state court applied *Strickland* in an objectively unreasonable manner. *Williams,* 529 U.S. at 365; *Sellan v. Kuhlman,* 261 F.3d 303, 314–15 (2d Cir.2001). For a state court to apply a federal standard such as *Strickland* in an unreasonable manner, "[s]ome increment of incorrectness beyond error is required" but "the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Sellan,* 261 F.3d at 315 (citing *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct.*" *Strickland,* 466 U.S. at 690 (emphasis added). And "an attorney is not required to forecast changes or advances in the law." *Kuhlman,* 261 F.3d at 315 (quoting *Jameson v. Coughlin,* 22 F.3d 427, 429 (2d Cir.1994)).

**\*12** The New York Supreme Court presiding over Antoine's 440 Motion rejected his claim of ineffective assistance of counsel on the merits. (Dkt. 3–3 at ECF 32–42.) The court there found that, consistent with New York law, Antoine's counsel was not ineffective because Antoine received an advantageous plea arrangement and nothing in the record cast doubt on counsel's effectiveness. (Dkt. 3–3 at ECF 32); *see People v. Ford,* 86 N.Y.2d 397, 404, 633 N.Y.S.2d 270, 657 N.E.2d 265 (1995). For the reasons set forth below, the New York Supreme Court did not err nor unreasonably apply *Strickland* in denying Antoine's 440 Motion.

#### b. *Trial Counsel's Performance*

Antoine alleges that his trial counsel improperly failed to advise him about the possibility of prevailing at trial based on the theory that Antoine's conduct constituted manslaughter and not depraved indifference murder. (Dkt. 1, ECF 26–29.) Antoine cannot meet his burden under *Strickland* with respect to this claim.

With respect to the first prong of the *Strickland* test- the performance of counsel-the professional norms of

attorney conduct "provide at least two benchmarks for the representation of a client who is deciding whether to accept a plea offer." *Purdy v. United States,* 208 F.3d 41, 44 (2d Cir.2000). First, the Model Rules of Professional Conduct ("Model Rules") provide that "a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Id.* at 45 (citing Model Rules of Professional Conduct Rule 1.4(b) (1995)). [15] When a plea offer is made to a client, the attorney's "knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Id.* (citation and alteration omitted). Thus, defense counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Id.* "[D]efense counsel 'must give the client the benefit of counsel's professional advice on the crucial decision' of whether to plead guilty." *Id.* (quoting *Boria v. Keane,* 99 F.3d 492, 497 (2d Cir.1996)).

Second, the Model Rules also provide that "the ultimate decision whether to plead guilty must be made by the defendant." *Purdy,* 208 F.3d at 45. To strike a proper balance between these two considerations, "[c]ounsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because representation is an art." *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citations and alterations omitted)).

Here, Antoine fails to establish that his attorney did not satisfy these obligations. Antoine does not establish that his counsel failed to advise him as to the strengths and weaknesses of his case. The record reflects that Antoine conferred with his counsel multiple times during the plea proceeding and that, at a minimum, the trial court set forth the significant weaknesses of Antoine's case and the significant risk of conviction that Antoine faced by going to trial. (*See* Dkt. 3–4 at ECF 54, ECF 56, ECF 58.) Antoine confirmed to the court that he was discussing the case and a possible guilty plea with his attorney, and raised no complaints about his attorney's performance or the advice the attorney was providing at that time. (Dkt. 3–4 at ECF 60.) "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Although such declarations are not an insurmountable barrier to habeas relief, *see id.* at 74–75, the record evidence here, the trial transcript, and Antoine's statements during his guilty plea, all show that Antoine's claim with respect to his counsel's defective performance regarding his advice to plead guilty is without merit. Even now, Antoine fails to specify how his counsel's conduct was "coercive" beyond the attorney advising Antoine that he was likely to be convicted at trial and could only receive more time if convicted at trial, and that he should therefore plead guilty-all indicia of reasonable and proper representation given Antoine's situation and the facts of his case.

**\*13** Furthermore, contrary to Antoine's assertions, his counsel was not ineffective for failing to advise Antoine that his conduct constituted manslaughter rather than depraved indifference murder, and that Antoine should have proceeded to trial with that defense. Such advice would have been erroneous and would have exposed Antoine to a potentially greater sentence.

### 1. Evolution of New York's Depraved Indifference Murder Law

Antoine suggests that because of the "sea change in depraved murder jurisprudence" his conduct no longer meets the definition of depraved indifference murder. (Dkt. 1, ECF 28–29.) However, even assuming that Antoine's counsel could have predicted the change in the law, which became clear three years after Antoine's conviction, Antoine would not have benefitted from the change in the law because his conduct still constituted depraved indifference murder under the new definition.

At the time of Antoine's guilty plea, the elements for depraved indifference murder were governed by *People v. Register,* 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704 (1983). *Register* provided that there was no mens rea element for depraved indifference murder beyond recklessness. *Id.* at 278, 469 N.Y.S.2d 599, 457 N.E.2d 704. After Antoine's guilty plea and while his appeal was pending, the Court of Appeals decided *People v. Feingold,* 7 N.Y.3d 288, 294, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (2006), which was the culmination of a series of decisions eroding the "objective circumstances" standard of *Register* and moving in the direction of requiring a mens rea element for depraved indifference murder. *See People v. Martinez,* 20 N.Y.3d 971, 975–76, 959 N.Y.S.2d 674, 983 N.E.2d 751 (2012) (Smith.J., concurring) (discussing development of New York's depraved indifference murder jurisprudence). In *Feingold,* the Court of Appeals explicitly reversed *Register,* and established that "depraved indifference to human life is a culpable mental state" that had to be proved as an element of

depraved indifference murder. *Feingold,* N.Y.3d at 294. The court explained that "depraved indifference is best understood as an utter disregard for the value of human life-a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not[.]" *Id.* at 296, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (internal quotations omitted). The court also reiterated its earlier conclusion, from *People v. Gonzalez,* 1 N.Y.3d 464, 775 N.Y.S.2d 224, 807 N.E.2d 273 (2004), that depraved indifference is a state of mind that is inconsistent with an intent to kill. *Id.* at 293, 775 N.Y.S.2d 224, 807 N.E.2d 273. Hence, after *Feingold,* "depraved indifference murder convictions may no longer be upheld where the evidence of intent to kill is compelling." *Martinez,* 20 N.Y.3d at 976, 959 N.Y.S.2d 674, 983 N.E.2d 751. [16] In 2008, the Court of Appeals held that the intervening case law applies to cases pending on direct appeal. *See People v. Jean–Baptiste,* 11 N.Y.3d 539, 542, 872 N.Y.S.2d 701, 901 N.E.2d 192 (2008). [17]

## 2. *Depraved Indifference Murder Applied to Antoine*

The law at the time of Antoine's guilty plea, and the law on which Antoine's counsel advised him, permitted that depraved indifference murder may be established in "fatal one-on-one shootings or knifings," in which "a defendant's actions created an almost certain risk of death." *Martinez,* 20 N.Y.3d at 975, 959 N.Y.S.2d 674, 983 N.E.2d 751 (Smith, J., concurring) (discussing development of New York's depraved indifference murder) (citing *Policano,* 7 N.Y.3d at 599, 825 N.Y.S.2d 678, 859 N.E.2d 484); *see also People v. Sanchez,* 98 N.Y.2d 373, 378, 748 N.Y.S.2d 312, 777 N.E.2d 204 (2002) ( "defendant's shooting into the victim's torso at point-blank range presented such a transcendent risk of causing his death that it readily meets the level of manifested depravity needed to establish [depraved indifference murder]."

**\*14** That is the case here, in which Antoine admitted that he did not intend to kill Guerrier, but pointed and fired a gun at him from point-blank range, striking him in the back. [18] (Dkt. 3–4 at ECF 61–62); *see Sanchez,* 98 N.Y.2d at 384, 748 N.Y.S.2d 312, 777 N.E.2d 204 (finding that the defendant shooting victim in chest at close range "would permit a jury rationally to conclude that defendant demonstrated an indifference to human life"). The law at the time of Antoine's guilty plea thus permitted the conviction of a defendant under a theory of depraved indifference murder where a defendant "attacked and killed a single victim with a gun or knife, even where the evidence strongly pointed to intentional murder."

*Martinez,* 20 N.Y.3d at 975, 959 N.Y.S.2d 674, 983 N.E.2d 751 (Smith, J., concurring). This is especially true where, as here, the defendant admitted that although he did not intend to kill the victim, he nonetheless shot the victim in the back. Therefore, Antoine's trial counsel was not ineffective in not advising Antoine regarding what would become a significant change in New York's depraved indifference murder law, because such a change had yet to occur.

At best, the legal support to which Antoine directs the Court stands for the principle that a New York jury may not convict a defendant of depraved indifference murder "where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim." *Policano v. Herbert,* 7 N.Y.3d 588, 600–01, 825 N.Y.S.2d 678, 859 N.E.2d 484 (2006). *Policano,* decided after Antoine's conviction, does not support the principle that depraved indifference murder *cannot* lie in one-on-one killings evincing the intent to kill, although the court did state that such killings "can almost never qualify as depraved indifference murder." *Id.* at 601, 825 N.Y.S.2d 678, 859 N.E.2d 484 (citing *People v. Payne,* 3 N.Y.3d 266, 272, 786 N.Y.S.2d 116, 819 N.E.2d 634 (2004)). But that is not the case here in any event because Antoine stated he did not intend to kill Guerrier but nevertheless shot him in the back from point-blank range.

## 3. *Counsel's Advice Regarding Depraved Indifference Murder*

Although Antoine relies on *People v. Hafeez,* 100 N.Y.2d 253, 762 N.Y.S.2d 572, 792 N.E.2d 1060 (2003), to show that the law changed before his guilty plea (Dkt. 1 at ECF 28), this reliance is misplaced. *Hafeez* did not change New York's law of depraved indifference. It merely portended the change that came three years later with *Feingold. See Martinez,* 20 N.Y.3d at 976–77, 959 N.Y.S.2d 674, 983 N.E.2d 751 ("our new standard as articulated in *Feingold* should apply to cases brought on direct appeal in which the defendant has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction") (internal citations omitted). Indeed, in a certified question from the Second Circuit, the New York Court of Appeals instructed that "a series of decisions [including *Hafeez* ] incrementally 'pointed the law in a different direction,' culminating in our explicit overruling of *Register* [60 N.Y.2d 270 (1980) ] and *Sanchez* [98 N.Y.2d 373 (2002) ], in *Feingold.*" *Policano v. Herbert,* 7 N.Y.3d 588, 595, 825 N.Y.S.2d 678, 859 N.E.2d 484 (2006) (citing *Feingold,* 7 N.Y.3d at 292, 819 N.Y.S.2d 691, 852

N.E.2d 1163). So, Antoine cannot show that his counsel was deficient for failing to predict the future with respect to New York's depraved indifference murder law, notwithstanding the decision in *Hafeez*.

**\*15** To the extent Antoine suggests his trial counsel's advice was deficient because of the purportedly meritorious defense to depraved indifference murder, that purported defense was not valid at the time of his plea and Antoine's counsel would have been mistaken in advising him regarding it. Antoine's counsel was not deficient in not advising Antoine that he had a meritorious defense to depraved indifference murder on this ground, because no such defense was available at the time of Antoine's guilty plea. Although Antoine's counsel did not foresee the dramatic change in New York law, "a trial lawyer is not required to have a crystal ball and predict changes in the law in order to render effective assistance." *Rodriguez v. Brown,* 11–CV1246(BMC), 2011 WL 4073748, at *4 (E.D .N.Y. Sept. 13, 2011).

For the same reason, Antoine's trial counsel was not ineffective for failing to predict the ruling in *Jean–Baptiste* in 2008 that the new definition of depraved indifference murder should be applied to cases such as Antoine's that were pending on direct appeal in 2008. Furthermore, Antoine would not have been benefitted from the change in the law, because even under the new definition-requiring a showing of a depraved indifference *mens rea* -Antoine's conviction would have been affirmed. The evidence that Antoine shot the victim at close range without intending to kill him would have been sufficient to establish that Antoine acted out of an "utter disregard for the value of human life-a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not[.]" *Feingold,* N.Y.3d at 296 (internal quotations omitted).

Viewing "the reasonableness of counsel's challenged conduct on the facts of the particular case ... *as of the time of counsel's conduct,*" *Strickland,* 466 U.S. at 690 (emphasis added), it cannot be said that the performance of Antoine's counsel was deficient when the legal development forming the basis of Antoine's complaint had not yet occurred.

### 4. *Counsel's Advice Regarding Manslaughter*

Antoine also asserts that his counsel was ineffective for failing to advise him that he was guilty of the lesser offense of manslaughter and not depraved indifference murder, or pursuing such a defense strategy at trial. (Dkt. 1 at ECF 28–29.) This is incorrect.

In New York, a person is guilty of manslaughter in the first degree when, "[w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.20[1]. A person is guilty of second-degree manslaughter when "[h]e recklessly causes the death of another person." N.Y. Penal Law § 125.15[1]. The evidence in this case contradicted a finding that Antoine acted recklessly: (1) Antoine planned the attack on Guerrier by slashing his tires the night before to ensure that Guerrier would be unable to leave his home; (2) the next morning, Antoine, armed with a gun, waited for Guerrier to exit his house; (3) Antoine directly approached Guerrier and shot him at close range; and (4) Antoine's motivation was "anger" for the abuse he had suffered. Given these facts, it would have been erroneous and improper for Antoine's trial counsel to advise him that he should pursue a trial defense that his conduct constituted manslaughter instead of murder.

**\*16** In sum, there is no evidence that Antoine's counsel's performance was constitutionally deficient.

### c. *Prejudice Arising from Counsel's Performance*

Under the second *Strickland* prong, Antoine must demonstrate that he was prejudiced by his counsel's purportedly deficient performance with respect to advising him to plead guilty. Antoine must show that, absent his attorney's constitutionally defective advice, he would have proceeded to trial. *See Hill v. Lockhart,* 474 U.S. 52, 59–60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Pham v. United States,* 317 F.3d 178, 182 (2d Cir.2003). This assessment, in turn, depends in part on a prediction of what the outcome of a trial might have been. *Hill,* 474 U.S. at 56–58. The Supreme Court in *Hill* explained that "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial ." *Id.* So too here the critical issue is whether the lesser culpability defense, *i.e.,* that Antoine was guilty of manslaughter and not depraved indifference murder, would have succeeded at trial.

Although Antoine claims that "there is a reasonable possibility" he would have not pleaded guilty and instead insisted on a trial had he been advised properly regarding the law on depraved indifference murder (*see* Dkt. 1 at ECF 39), this claim is insufficient to establish prejudice under *Strickland.* The Court's assessment of whether Antoine would have gone to trial depends in part on whether he can

demonstrate success at trial. *Hill,* 474 U.S. at 56–58. Antoine cannot meet this standard because the evidence against him was strong, if not overwhelming, and the defense upon which he would have relied at trial-that he was guilty of the lesser crime of manslaughter-had little chance of success given that Antoine's conduct squarely fit the definition of depraved indifference murder.

Other factors weigh in favor of finding that Antoine would not have decided to go to trial, including "whether pleading guilty gained him a benefit in the form of more lenient sentencing, [and] ... whether the defendant advanced any basis for doubting the strength of the government's case again him [.]" *Chhabra v. United States,* 720 F.3d 395, 408 (2d Cir.2013). As the trial court noted in denying Antoine's 440 Motion, Antoine received a favorable plea agreement, indeed, the statutory minimum for second-degree murder. (Dkt. 3–4 at ECF 67.) Trial counsel's advice to accept a guilty plea did not prejudice Antoine because Antoine received the most lenient sentence he could have received had he been convicted at trial, which, based on the overwhelming evidence of his guilt, was extremely likely. (*See* Dkt. 3–3 at 33) (citing *People v. Bristol,* 273 A.D.2d 248, 709 N.Y.S.2d 836 (2d Dep't 2000)); *see Seifert v. Keane,* 74 F.Supp.2d 199, 206 (E.D.N.Y.1999) ("Given the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient[.]"), *aff'd* 205 F.3d 1324 (2d Cir.2000). Furthermore, Antoine does not dispute the strength of the prosecution's evidence establishing that he shot and killed the victim. (Dkt. 1 at ECF 26) (acknowledging that "it was rather unlikely that identification would be a contested issue at trial"). Rather, Antoine argues that his defense at trial would have been based on a legal argument that Antoine "was guilty only of manslaughter" in the first or second degree, and not depraved indifference murder. However, as discussed *supra,* this argument would have had little chance of success at trial. Accordingly, Antoine has failed to meet his burden of affirmatively demonstrating that he was prejudiced by the advice of his trial counsel to plead guilty rather than go to trial, advice which fell well within the "wide range of professionally competent assistance," required under *Strickland. Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005).

### d. *Counsel's Failure to Seek a Plea to Manslaughter*

**\*17** To the extent Antoine suggests that he was prejudiced by his attorney's failure to seek an offer from the trial court or the government allowing him to plead guilty to manslaughter instead of depraved indifference murder, Antoine's argument must fail. Antoine did not have the right to plead guilty to a

lesser included offense without the prosecutor's consent. *See People v. Machare,* 264 A.D.2d 487, 695 N.Y.S.2d 112 (2d Dep't 1999); *People v. Melo,* 160 A.D.2d 600, 554 N.Y.S.2d 530 (1st Dep't 1990). The court did not have the power to permit such a plea, and the government did not agree to let Antoine plead to manslaughter or any other lesser offense. (Dkt. 3–4 at ECF 53) (trial court advising Antoine that "[t]he District Attorney [ ] tells me he is not going to reduce the charges"). Thus, Antoine cannot demonstrate either that his counsel was ineffective for failing to secure a plea offer to manslaughter or that Antoine was prejudiced by any failure to attempt to secure such a plea offer.

In sum, especially in light of the strong evidence of Antoine's guilt, lack of meritorious defenses, and the advantageous plea offer made by the trial court (the minimum available under New York law), far from performing in a constitutionally deficient manner, counsel provided Antoine meaningful representation by advising him to accept the trial court's advantageous plea offer. *See People v. Hunter,* 23 A.D.3d 767, 803 N.Y.S.2d 324 (3d Dep't 2005) (due to the "likelihood that the People would have been able to secure a conviction ... [d]efense counsel's conduct in encouraging defendant to accept the plea bargain here was nothing more than the product of reasonable and legitimate strategy in the best interest of defendant"). The New York Supreme Court's ruling on the merits with respect to Antoine's ineffective assistance claim was not in error, let alone an unreasonable application of clearly established federal law. Antoine's claim regarding the ineffectiveness of his counsel is denied.

### V. *Procedural Errors by the* N.Y.C.P.L. § 440.10 *Court*

Finally, Antoine claims that the lower court improperly denied his 440 Motion to vacate the judgment of conviction without conducting a hearing. Federal habeas relief is not available to redress such alleged procedural errors in state post-conviction proceedings. *Word v. Lord,* 648 F.3d 129, 131 (2d Cir.2011); *see* 28 U.S.C. § 2254(a).

Moreover, Antoine's challenge is to a decision in a New York's post-conviction proceeding and "not the judgment which provides the basis for his incarceration," so therefore the allegation "states no cognizable federal habeas claim." *Jones v. Duncan,* 162 F.Supp.2d 204, 218 n. 21 (2001) (citing *Sellers v. Ward,* 135 F.3d 1333, 1339 (10th Cir.1998)). [19] Because no habeas relief lies for the purported error in a state post-conviction proceeding for which Antoine seeks relief, the petition is denied as to that claim.

*CONCLUSION*

For the reasons set forth above, Antoine's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. Because Antoine has not shown that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," the Court declines to issue a Certificate of Appealability. *Middleton v. Att 'ys Gen.,* 396 F.3d 207, 209 (2d Cir.2005) (internal quotation marks omitted); *see also* 28 U.S.C. § 2253(c) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of Court is directed to terminate the petition and to close this case.

**\*18** SO ORDERED:

**All Citations**

Slip Copy, 2013 WL 4647497

Footnotes

1   This case initially was captioned *Antoine v. Martuscello.* The parties later began captioning their submissions *Antoine v. Ercole,* presumably to reflect the change in the superintendent of the facility where Antoine is incarcerated. Accordingly, the matter henceforth will be captioned *Antoine v. Ercole.*

2   The Court construes Antoine's *pro se* petition in the manner most favorable to him. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (requiring courts to hold *pro se* pleadings to less stringent standards); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 472 (2d Cir.2006) (the court is obligated to construe *pro* se petition "to raise the strongest arguments" it suggests) (emphasis omitted).

3   Citations to "ECF" pages refer to the page numbering of the Electronic Court Filing ("ECF") system. Citations not so labeled refer to the internal page numbering of the cited source.

4   Antoine's entire statement is appended to the state's brief in response to Antoine's direct appeal of his conviction. (Dkt. 3–2 at ECF 28–31.)

5   Antoine was 18–years old at the time of the plea proceeding.

6   During the hearing, Antoine conferred with counsel several other times. (*See* Dkt. 3–4 at ECF 54, ECF 56, ECF 58.) The plea proceeding transcript gives no indication as to the length of each of Antoine's off-the-record discussions with his attorney, nor can it convey the tone or pace of the judge's or parties' statements during the colloquy.

7   Antoine indicated in his stay request that the grounds for his appellate counsel ineffectiveness claim were that his appellate counsel did not raise the issue of ineffective assistance of trial counsel. (Dkt. 4 at 1.)

8   Antoine's petition does not include the claim that his appellate counsel was ineffective, which is the issue that prompted Antoine to seek a stay of these proceedings so that he could exhaust the claim in state court. Had this action been stayed and Antoine had exhausted this claim in state court, under Rule 15 he could have returned to this Court to request leave to amend the instant habeas petition to include a claim for ineffective assistance of appellate counsel. However, Judge Irizarry properly denied Antoine's stay request because Antoine failed to show good cause for not previously exhausting this claim. Judge Irizarry's denial of the stay and Antoine's resulting inability to exhaust that claim in state court gives rise to a procedural bar with respect to any claim of ineffective assistance of appellate counsel.

9   Indeed, Antoine on direct appeal conceded that "[s]ince appellant did not move to withdraw his plea prior to sentencing, his claim that the plea was not entered voluntarily, knowingly and intelligently is not preserved for appellate review." (Dkt. 3–2 at ECF 21.)

10  Even assuming *arguendo* that the Appellate Division erroneously applied New York law with respect to the preservation rule, no habeas relief lies for mere errors of state law that do not otherwise constitute a violation of federal law. *Swarthout v. Cooke,* —— U.S. ——, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011); *Wilson v. Corcoran,* —— U.S. ——, 131 S.Ct. 13, 16, 178 L.Ed.2d 276 (2010). Rather, such errors must rise to the level of a violation of the federal constitutional or other federal law for habeas relief to lie. 28 U.S.C. § 2241; *Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975) (*per curiam* ).

11  Any claim that Antoine's failure to seek to withdraw or vacate his plea was the result of ineffective counsel cannot overcome a procedural bar unless he can show that he would have prevailed on the merits of his ineffectiveness claim,

*i.e.,* that his counsel was ineffective for not advising him to withdraw his guilty plea. *See McLeod v. Graham,* 10–CV–3778(BMC), 2010 WL 5125317, at *7 (E.D.N.Y. Dec. 9 2010) (citing *Aparcio v. Artuz,* 269 F.3d 78, 99 n. 10 (2d Cir.2001)); *Larrea v. Bennett,* 368 F.3d 179, 182 (2d Cir.2004)). Antoine cannot meet this burden because, as discussed *infra,* it was not ineffective for Antoine's counsel to advise him to plead guilty. So too it was not ineffective for Antoine's counsel not to advise him to withdraw that plea.

12    Even had the trial court improperly participated in Antoine's plea hearing, automatic vacatur of his conviction would not be required, and the Court would review the totality of the circumstances to ascertain whether there exists "a reasonable probability that, but for the [judge's improper participation], he would not have entered the plea." *United States v. Davila,* ——— U.S. ———, ———, 133 S.Ct. 2139, 2142, 186 L.Ed.2d 139 (U.S.2013). Such an inquiry is not necessary here, however, because the trial court did not conduct itself improperly.

13    *People v. Antommarchi,* 80 N.Y.2d 247, 250, 590 N.Y.S.2d 33, 604 N.E.2d 95 (1992) established that a defendant has a right to be present during any material stage of the trial, including any side-bar discussions with prospective jurors relating to the jurors' ability to "weigh the evidence objectively."

14    Antoine further argues that his plea was not knowing and voluntary because the court misled him with respect to the legal standard of depraved indifference murder. (*See* Dkt. 1 at 9.) Having already found that claim procedurally barred from review on the basis of an adequate and independent state ground, the Court nevertheless addresses this contention in the context of Antoine's ineffective assistance of counsel claim, which sets forth the same argument regarding depraved indifference murder. *See infra* IV.b.

15    The rules governing the professional conduct of attorneys have changed since Antoine's conviction, but at the time of his guilty plea, the rules then in effect were the same as in *Purdy.* However, the change in the rules did not substantively affect the portions relevant here. *Compare* N.Y. Rule of Professional Conduct Rules 1.2, 1.4 (April 1, 2009) *with* N.Y. Lawyer's Code of Professional Responsibility Rule EC 7–7 (Dec. 28, 2007).

16    Several months after its decision in *Feingold,* in November 2006, the Court of Appeals decided *Policano v. Herbert,* 7 N.Y.3d 588, 825 N.Y.S.2d 678, 859 N.E.2d 484 (2006), in which it held, in response to a certified question from the Second Circuit, that the change in the law regarding the mens rea element of depraved indifference murder that was definitively established in *Feingold* does not apply retroactively to convictions challenged on collateral review. *Id.* at 603–04, 825 N.Y.S.2d 678, 859 N.E.2d 484. Although Walker sought collateral review of his convictions by filing a *coram nobis* petition and a 440 Motion, he did not raise the jury charge issue in either of those petitions. *Id.*

17    Antoine did not argue on direct appeal that his conviction could not be upheld under the thendeveloping depraved indifference murder law. (*See* Dkt. 3–2 at ECF 2.) Nevertheless, the Appellate Division, in rejecting his appeal, made clear that any such challenge, had it been made, would have been forfeited by Antoine's guilty plea. *People v. Antoine,* 59 A.D.3d 560, 872 N.Y.S.2d 283 (2d Dep't 2009) (citing *People v. Shearer,* 29 A.D.3d 608, 813 N.Y.S.2d 308 (2d Dep't 2006); *see also People v. Thomas,* 53 N.Y.2d 338, 343 n. 2, 441 N.Y.S.2d 650, 424 N.E.2d 537 (1981) ("Forfeiture occurs by operation of law as a consequence of a guilty plea, with respect to issues which as a matter of policy the law does not permit to survive such a plea."). The Appellate Division's reliance on New York's forfeiture rule constitutes an adequate and independent stand ground for the denial of Antoine's appeal on this ground and therefore would bar habeas relief with respect to such a claim, which Antoine in any event does not make. *See supra* at 14–17 (discussing "adequate and independent state ground doctrine"); *see also Coleman v. Thompson,* 501 U.S. 722, 729–33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Therefore, the only claim Antoine has with respect to depraved indifference murder is in the context of his trial counsel's purported failure to advise him regarding the state of the law of depraved indifference murder.

18    In his habeas petition, Antoine for the first time claims that he told police "he had only intended to scare his stepfather when the gun *accidentally* went off." (Dkt. 1 at ECF 5) (emphasis added). Antoine never before has claimed that the gun fired accidentally, and the Court does not credit Antoine's statement. To the contrary, Antoine's written confession states that "[t]he reason why I shot it [the bullet] out was because of all the anger I had for him over the years from all the abuse[.]" (Dkt. 3–2 at ECF 30.) And in his allocution, Antoine stated that, although he did not intend to kill the victim, he pointed the gun at the victim and "pulled the trigger." (Dkt. 3–3 at ECF 61.) In any event, the Appellate Division held that Antoine's "contention that the circumstances surrounding his shooting of the victim in this case did not constitute depraved indifference murder was forfeited by his plea of guilty," *People v. Antoine,* 59 A.D.3d (2d Dep't 2009) (citing *People v. Shearer,* 29 A.D.3d 608, 813 N.Y.S.2d 308 (2006)), which constitutes an adequate and independent state ground barring federal habeas review with respect to that issue.

19    The district court in *Jones v. Duncan* recognized that, although the Second Circuit had not at that time directly ruled that a procedural error in a post-conviction review proceeding such as N.Y.C.P.L. § 440.10 was not cognizable on federal habeas review, the district court followed the majority of circuits to so rule. *See Jones,* 162 F.Supp.2d at 218. Since

*Jones,* however, the Second Circuit has ruled that "a due process challenge to New York's collateral post-conviction proceedings[ ] does not state a claim that is cognizable under federal habeas review." *Word v. Lord,* 648 F.3d at 131.

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2559372
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Akeem BROWN, Petitioner,
v.
Israel RIVERA, Respondent.

Civ. No. 9:05-CV-1478 (RFT).
|
June 23, 2008.

**Attorneys and Law Firms**

Akeem Brown, Gouverneur, N.Y., pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Frederick H. Wen, Esq., Assistant Attorney General, of Counsel, New York, N.Y., for Respondent.

*MEMORANDUM-DECISION AND ORDER* [1]

RANDOLPH F. TREECE, United States Magistrate Judge.

**\*1** *Pro se* Petitioner Akeem Brown brings this Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254, on the grounds that (1) his guilty plea was involuntarily and unintelligently made; and (2) his sentence was unduly harsh and excessive. Dkt. No. 1, Pet. For the reasons that follow, the Petition is **dismissed.**

## I. BACKGROUND

On April 5, 2002, Petitioner was charged with murder in the second degree (N.Y. PENAL LAW § 125.25(1)), criminal possession of a weapon in the second degree (N.Y. PENAL LAW § 265.03(1)), and criminal possession of a weapon in the third degree (N.Y. PENAL LAW § 265.02(4)), arising from two separate incidents that occurred in January 2002. State Ct. R. on Appeal (hereinafter "R."), Ex. A, Pet'r Appellate Br. at p. 2. On May 30, 2002, Petitioner pleaded guilty to one count of criminal possession of a weapon in the second degree in exchange for a determinate prison sentence of fifteen (15) years and three (3) years post-release supervision, full satisfaction of all three charges, and a promise from the prosecution that no charges would be

brought against Petitioner in an unindicted robbery case. R., Plea Hr'g Tr., dated May 30, 2002, at pp. 4-7. In accordance with the plea, Petitioner was sentenced to fifteen (15) years incarceration with three (3) years post-release supervision. R., Sentencing Tr., dated June 20, 2002, at p. 17.

Petitioner filed a direct appeal to the New York State Supreme Court, Appellate Division, Fourth Department, on the same grounds raised in this Petition, which was denied. *People v. Brown,* 779 N.Y.S.2d 372 (App. Div., 4th Dep't 2004). Petitioner's application for leave to appeal to the Court of Appeals was also denied. *People v. Brown,* 818 N.E.2d 674 (N.Y.2004).

On July 29, 2004, Petitioner filed a motion to vacate his conviction pursuant to N.Y. CRIM. PROC. L. § 440.10 on the grounds that his plea was involuntarily and unintelligently made due to ineffective assistance from his trial counsel. R. Ex. F, Pet'r Mot. to Vacate at p. 8. None of the ineffective assistance of counsel claims raised in Petitioner's § 440 motion have been raised in the instant Petition. *See generally* Pet. On September 19, 2002, the trial court denied Petitioner's motion to vacate without a hearing. R., Ex. H, Order Denying Pet'r § 440 Mot., dated Sept. 19, 2005, at p. 7. Petitioner did not appeal the denial of his § 440 motion. Pet. at ¶¶ 14-21.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **\*2** 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello,* 460 F.3d 238 (2d Cir.2006); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d

Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997); *Rivera v. New York,* 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *see also DeBerry v. Portuondo,* 403 F.3d at 66; *Boyette v. LeFevre,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Williams* and *Francis S. v. Stone,* 221 F.3d 100, 108-09 (2d Cir.2000)).

## B. Independent and Adequate State Grounds

Federal *habeas* review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 728 (1991) (citations omitted); *see also Harris v. Reed,* 489 U.S. 255, 261-62 (1989); *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995). "This rule applies whether the state law ground is substantive or procedural."

*Coleman v. Thompson,* 501 U.S. at 729 (citation omitted). The independent and adequate state ground doctrine is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of federal claims in a *habeas* petition. *Harris v. Reed,* 489 U.S. at 264 n. 10.

In the case at bar, the Appellate Division dismissed Petitioner's claim that his plea was involuntarily and unintelligently entered into because he had failed to preserve that claim by making a timely motion to withdraw his plea or vacate the judgment. [2] *People v.. Brown,* 779 N.Y.S.2d 372 (citing *People v. Lopez,* 525 N.E.2d 5, 6 (N.Y.1988)). New York's contemporaneous objection rule, codified as N.Y. CRIM. PROC. L. § 470.05(2), requires that in order to preserve a claim for appeal, a defendant must make his objection known at the time of a trial or proceeding, so as to give the trial court the opportunity to remedy its own errors. The Second Circuit Court of Appeals has "observed and deferred" to New York's contemporaneous objection rules as a bar to federal *habeas* review. *Garcia v. Lewis,* 188 F.3d 71, 79 (2d Cir.1999) (citing, *inter alia, Bossett v. Walker,* 41 F.3d 825, 829 n .2 (2d Cir.1994)); *see also Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) (violation of the contemporaneous objection rule is an adequate and independent state ground). It is clear that the Appellate Division based its denial of this claim on an adequate and independent state ground, and therefore, the federal claim was procedurally defaulted in state court. Accordingly, federal review is barred, unless Petitioner demonstrates cause for the default and resulting actual prejudice, or alternatively that failure to review the claim would result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. at 748-50. To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman v. Thompson,* 501 U.S. at 753, *Restrepo v. Kelly,* 178 F.3d 634, 639 (2d Cir.1999). Examples of external factors include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *Bossett v. Walker,* 41 F.3d at 829 (citing *Murray* ); *United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1992).

***3** In his § 440 motion, Petitioner asserted several claims of ineffective assistance of counsel, however, none of those claims concerned his failure to preserve this involuntary plea

claim. *See* Pet'r Mot. to Vacate. Petitioner offers no other explanation or cause for his failure to preserve the claim in question. When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice, since federal *habeas* relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985); *Long v. Lord,* 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006).

Petitioner has also failed to demonstrate or even argue that failure to consider this claim would result in a fundamental miscarriage of justice, which "occurs only in those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.' " *Rodriguez v. Mitchell,* 252 F.3d 191, 203 (2d Cir.2001) (quoting *McCleskey v. Zant,* 499 U.S. 467, 494 (1991). In light of Petitioner's multiple admissions, it is difficult to envision a meritorious claim of innocence with respect to his conviction on criminal possession of a weapon in the second degree. A person is guilty of criminal possession of a weapon in the second degree when he possesses a loaded firearm with intent to use the same unlawfully against another. N.Y. PENAL LAW § 265.03(3) (1998), *amended by* 2005 N.Y. SESS. LAWS 764 & 2006 N.Y. SESS. LAWS 742. Petitioner admitted in statements to police and in the instant Petition that he shot the victim, ostensibly with a loaded weapon, but claims he did so in self-defense. *See* Pet. at p. 21 & Plea Hr'g Tr. at p. 11 (Petitioner's trial attorney stated, "[Petitioner] kept a gun because that's the way he thought he needed to protect himself" and "[h]e's certainly going to pay a price because of the way he protected himself, the illegal handling of a gun."). Although intent is an element of criminal possession of a weapon in the second degree, under New York law the justification of self-defense does not apply to a crime based on illegal possession of a weapon. *Davis v. Strack,* 270 F.3d 111, 133-34 (2d Cir.2001) (citing, *inter alia, People v. Pons,* 68 N.Y.2d 264 (N.Y.1986)). Thus, Petitioner's admission that he illegally possessed and used a loaded firearm would have been dispositive on that charge. Therefore, our decision not to consider this claim would not result in a fundamental miscarriage of justice.

Even assuming, *arguendo,* that Petitioner's claim regarding the voluntariness and intelligence of his guilty plea was not procedurally barred, it would still fail. The Fifth Amendment requires guilty pleas to be voluntary and intelligent in order to withstand constitutional muster. *Brady v. United States,* 397 U.S. 742, 748 (1970). "To determine the voluntariness of a plea, the court should consider all of the relevant circumstances, including the possibility of a heavier sentence following a guilty verdict after trial, the Defendant's previous contact with the criminal justice system, and whether the court addressed the defendant and explained his options." *Bello v. People,* 886 F.Supp. 1048, 1054 (W.D.N.Y.1995) (citing *Magee v. Romano,* 799 F.Supp. 269, 300 (E.D.N.Y.1992)). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970) (citations omitted). Courts will also look to see whether the plea was entered into with the advice of counsel. *United States v. Broce,* 488 U.S. 563, 572 (1989). When a petitioner who pleads guilty on the advice of counsel later attacks the voluntariness of that plea, the petitioner has the burden of proving (1) that counsel's advice deviated from the suitable range of competence expected of criminal lawyers, and (2) a reasonable probability that but for such deviation, he would not have pleaded guilty. *Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985) (citations omitted) (applying the *Strickland v. Washington,* 466 U.S. 668 (1984) standard to challenges to guilty pleas based on ineffective assistance of counsel).

**\*4** In this case, Petitioner asserts that his plea was defective "either because [he] did not understand the nature of the constitutional protections that he was waiving, or because he has such an incomplete understanding of the charge that his plea can not stand as an intelligent admission of guilt." [3] Pet. at p. 18. The following colloquy between Petitioner and the Honorable Anthony F. Aloi, County Count Judge, occurred at the plea hearing:

> THE COURT: And Mr. Brown, have you heard what he have just said here today? You're going to plead guilty to the second count of this indictment, Criminal Possession of a Weapon in the Second Degree, in violation of Penal Law 265 point on 3(1), and I've said to you based upon that plea-and that plea is in full satisfaction of the other counts of this indictment-that at time of sentence that I would sentence you to a determinate sentence of 15 years with a three year post release supervision period. Is that your understanding of how we're going to dispose of this matter?

> THE DEFENDANT: Yes.

> THE COURT: Have any other promises been made to you by anyone to induce you to make this plea

other than what I have said here and on the record? Any other promises made to you?

THE DEFENDANT: No.

MR. CIMINO: Well, Judge, there was another consideration-is that the People weren't going to prosecute him on an unindicted robbery case.

MR. O'DONNELL: That's correct, Your Honor.

THE COURT: That's part of this disposition, that's correct. Any other representations, Mr. Brown?

THE DEFENDANT: No.

THE COURT: All right. Do you understand, Mr. Brown, that you have an absolute right to a trial before me or before a jury, and by this plea you're going to waive that right? You do not want a trial of this matter, is that correct?

THE DEFENDANT: Correct.

THE COURT: Do you understand at that trial the People have an obligation to call witnesses against you, your lawyer has a right to cross-examine those witnesses. You have a right to call witnesses on your own behalf and to testify in your own behalf, and by this plea you're going to waive those rights. You do not want a trial and you do now want to exercise those rights, is that correct?

THE DEFENDANT: Correct.

THE COURT: You should also understand, Mr. Brown, that you're pleading guilty to a felony. If you get into any new felony trouble within the next ten years you must receive mandatory state imprisonment for mandatory periods of time. Do you understand that?

THE DEFENDANT: That's correct.

THE COURT: Any question about that?

THE DEFENDANT: No sir.

THE COURT: You should also understand, Mr. Brown, that your plea of guilty is equivalent to a verdict after trial. It's just as if I or the jury had heard all the evidence in your case and we have determined that the People have established

beyond a reasonable doubt that you have, in fact, committed the crime of Criminal Possession of a Weapon in the Second Degree in violation of Penal Law 265.03(1). Your plea of guilty is equivalent to a verdict after trial. Do you understand that?

**\*5** THE DEFENDANT: Yes.

THE COURT: Any question about that?

THE DEFENDANT: No, sir.

THE COURT: Do you have any questions of your attorney or the Court at this time?

THE DEFENDANT: No.

THE COURT: You should also understand, Mr. Brown, that you have an absolute right to remain silent. By this plea I'm going to ask you to waive that right and you're going to admit to me you committed the crime. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Any question about that?

THE DEFENDANT: No.

THE COURT: The second count of Indictment 2002-0329-1 charges Akeem Brown with having committed the crime of Criminal Possession of a Weapon in the Second Degree in violation of Penal Law 265.03(1) in that it is alleged, Mr. Brown, that on or about the 17th day of January, 2002, at the City of Syracuse, in this county, that you possessed a loaded firearm intending to use the same unlawfully against Sean Trenton, to wit: A loaded 25 calibre [sic] semi-automatic handgun. Is that true?

THE DEFENDANT: Yes.

THE COURT: On that date and at that time you possessed that loaded firearm intending to use it unlawfully against that gentleman. Is that true?

THE DEFENDANT: Yes.

THE COURT: How do you plea then to the charge of Criminal Possession of a Weapon in the Second Degree in violation of Penal Law 265.03(1), how do you plead?

THE DEFENDANT: Guilty.

THE COURT: Based upon Akeem R. Brown's responses to my questions I find this plea of guilty is knowingly, intelligently and voluntarily made, and I'll accept your plea of guilty to that charge.

Plea Hr'g Tr. at pp. 3–7.

Statements made at a plea allocution carry " 'a strong presumption of verity.' " *United States v. Maher,* 108 F.3d 1513, 1530 (2d Cir.1997) (quoting *Blackledge v. Allison,* 431 U.S. 63, 74 (1977)). The transcript quoted above demonstrates that Petitioner was informed of the rights he was giving up and was told exactly what his sentence would be in return. Petitioner's claim that he did not fully understand or was not aware of the standard of proof the state would have had to meet on the murder charge is belied by the record. The prosecutor stated at the plea hearing that the plea bargain was being offered "in light of the very real issue of self defense [.]" *Id.* at p. 3. Thus, the prosecutor tacitly acknowledged in open court that the potential difficulty in obtaining a conviction on the murder charge was at least part of the impetus for offering the favorable plea that Petitioner accepted.

Petitioner was indicted on counts of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. He pleaded guilty to one count of criminal possession of a weapon in the second degree in exchange for a determinate prison sentence of fifteen (15) years and three (3) years post-release supervision and in full satisfaction of all three charges, as well as a promise from the prosecution that no charges would be brought against him in an unindicted robbery case. Had Petitioner gone to trial on all charges, he would have faced potential concurrent sentences of fifteen (15) to twenty-five (25) years on the second degree murder charge, N.Y. PENAL LAW §§ 125.25(1) & 70.00(2)(a), (3)(a)(i), and three and one-half (3.5) to fifteen (15) years on the criminal possession of a weapon in the second degree charge, N.Y. PENAL LAW §§ 265.03(1) & 70.02(3)(b), and in addition a consecutive term of two (2) to seven (7) years on the criminal possession of a weapon in the third degree charge, N.Y. PENAL LAW §§ 265.02(4) & 70.02(3)(c). This does not include any potential sentence on the unindicted robbery charge, which apparently involved the use of a loaded firearm. *See* Pet'r Mot. to Vacate at Ex. H, Stephen Lance Cimino, Esq. Affirm., dated May 5, 2003.

**\*6** The plea Petitioner accepted was therefore a favorable one, and we note that pleading guilty with the aim of limiting the possible penalty has no bearing on voluntariness nor on counsel's effectiveness. *North Carolina v. Alford,* 400 U.S. at 31.

Therefore, because this claim is procedurally barred and without merit, it is **dismissed.**

## C. Harsh and Excessive Sentence

Brown claims that the fifteen (15) year sentence he received as part of his plea bargain was unduly harsh and excessive. Pet. at Ground Two. Succinctly, Petitioner asserts that the trial court erred because instead of focusing on his character at sentencing, it focused instead on the larger problem of handguns in our society. *Id.*

It is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citation omitted); *Mayerhofer v. Bennett,* 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007). Here, Petitioner was convicted of criminal possession of a weapon in the second degree, a class C felony that carries a potential determinate sentence of three and one-half (3½) to fifteen (15) years incarceration. N.Y. PENAL LAW §§ 265.03(1), 70.02(1)(b) & (3)(b). In accordance with the plea bargain, Judge Aloi sentenced Petitioner to the maximum fifteen (15) year sentence with three (3) years mandatory post-release supervision. *See supra* Part II.B. Since the imposed sentence was within the statutory range, this theory cannot afford Petitioner relief.

Petitioner's argument that the trial court did not take into account his personal character traits and instead focused on the threat of handguns to society in general is similarly unavailing. The record clearly shows that the plea bargain was contingent upon Judge Aloi's agreement to sentence Petitioner to the maximum fifteen (15) year sentence. Plea Hr'g Tr. at p. 3. The terms of that agreement, which satisfied all three charges and an additional unindicted robbery charge, were made clear at the Plea Hearing. *Id* . at pp. 3–7. That Judge Aloi took a moment during sentencing to lament the pervasiveness of gun violence in our society does not demonstrate that Petitioner was being punished for the unlawful acts of others.

Finally, to the extent that Petitioner's claim could arguably be viewed as a challenge under the Eighth Amendment's prohibition of cruel and unusual punishment, that claim also fails. The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade,* 538 U.S. 63, 72-73 (2003); *Harmelin v. Michigan,* 501 U.S. 957, 995 (1991). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle,* 445 U.S. 263, 271 (1980). For example, the Supreme Court has held that, for offenses less than manslaughter, sentences longer than twenty-five (25) years are not grossly disproportionate. *See Ewing v. California,* 538 U.S. 11 (2003) (25 years to life for grand theft) (cited in *Staubitz v. Lord,* 2006 WL 3490335, at *2 (E.D.N.Y. Dec. 1, 2006)) & *Harmelin v. Michigan,* 501 U.S. at 995 (life in prison without the possibility of parole for cocaine possession). Petitioner's sentence was not contrary to or an unreasonable application of that precedent. *See Long v. Lord,* 2006 WL 1977435, at *14 (N.D.N.Y. Mar. 21, 2006) (sentences within state limits "are simply not cruel and unusual punishment in the constitutional sense.").

 **\*7** Since the sentence imposed was plainly within the limits authorized by state statute, and was not grossly disproportionate to the crime of conviction, this ground of the Petition is **denied.**

## III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED,** that the Petition for a Writ of *Habeas Corpus* be **DENIED;** and it is further

**ORDERED,** that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000); and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 2559372

Footnotes

1    Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule 72.2, the parties consented to this
     Court presiding over all matters. Dkt. No. 11.

2    We note that Petitioner's § 440 motion was filed subsequent to his direct appeal. *See supra* Part I.

3    We note again that the instant Petition does not include the ineffective assistance of counsel claims raised in Petitioner's
     § 440 motion. *See generally* Pet. However, even if Petitioner had asserted those grounds for relief, they would likely be
     deemed exhausted but procedurally barred because Petitioner did not appeal the trial court's denial of his § 440 motion
     and his time to do so or seek an extension to file an appeal expired. Furthermore, Plaintiff's assertion that his failure to
     exhaust was caused by inadequate legal assistance at the prison, *see supra,* n. 2, does not state a valid justification. *See*
     *Garcia v. Laclair,* 2008 WL 801278, at *4 (S.D.N.Y. Mar. 24, 2008) ("[D]espite Petitioner's conclusory statement about
     ineffective assistance by a legal assistant at his correctional facility, Petitioner has not credibly demonstrated that there
     were any external factors preventing him from [exhausting his claim].").

**End of Document**                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.


Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Julia LONG, Petitioner,
v.
Elaine A. LORD, Respondent.
**No. 03-CV-0461 NPM.**

March 21, 2006.

Julia Long, Bedford Hills Correctional Facility, Bedford Hills, NY, Petitioner, pro se.

Hon. Eliot Spitzer, Office of Attorney General, New York State Attorney General, The Capitol, Albany, NY, for the Respondent.

Bridget E. Holohan, Ass't Attorney General, of counsel.

*Memorandum-Decision and Order issued in*

SMITH, J.

*MEMORANDUM-DECISION and ORDER*

MCCURN, Senior J.

*1 Petitioner Julia Long, a New York State prison inmate as a result of 1997 convictions for the crimes of first degree assault and criminal possession of a weapon, has commenced this proceeding seeking federal habeas relief pursuant to 28 U.S.C. § 2254. In her petition, Long asserts seven separate grounds in support of her request for federal habeas intervention. Respondent has filed a response in opposition to Long's petition, arguing therein that some of the claims asserted by Long are procedurally barred, and additionally that none of the grounds advanced in her petition have merit.

This Court finds that Long is procedurally barred from asserting several of the claims she has raised in her petition. Since petitioner has not established cause for her procedural default concerning those grounds or that she is actually innocent of any of the crimes of which he stands convicted, this Court denies those claims as procedurally barred. Furthermore, after considering the remaining grounds raised by Long in her petition in conjunction with applicable case law, this Court finds that the additional claims asserted by Long in her habeas petition lack merit. Accordingly, this Court denies and dismisses Long's petition.

I. *BACKGROUND*

A. *State Court Proceedings*

According to the state court records below, in the afternoon of May 1, 1995, Long attended a meeting at the TC Club in Albany, New York in order to discuss the possibility of leasing that property from its owner. *See* Transcript of Trial of Julia Long (1/3/97) ("Trial Tr.") at 366. Ivetta Parson, an individual with whom Long had had

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

an altercation earlier that year, was also at the club around the time of Long's meeting. *See* Trial Tr. at 120-23. For reasons not apparent from the record, Long approached Parson at that time and sprayed her face with mace. Trial Tr. at 123-24. Parson ran out of the club and went to the home of her friend, Regina Monell, where Parson washed her face. Trial Tr. at 125. The two then decided to drive to the TC Club with some friends and confront Long about the incident that had just transpired. Trial Tr. at 126-27. When the group arrived at the club, Parson observed Long holding a handgun. Trial Tr. at 132. Parson exited her vehicle, and as she was walking around her car she discovered that she was bleeding.[FN1] Trial Tr. at 132-33. Around this same time, Monell observed Long firing her weapon at Parson, Trial Tr. at 163-64, and soon thereafter Monell noticed that she had also been shot. Trial Tr. at 164.

> **FN1.** Parson did not hear Long's gun discharge. Trial Tr. at 133.

**\*2** The trial transcript also reflects that on May 1, 1995, Charles Traynham was a long time acquaintance of Robert Temple. Trial Tr. at 292. At approximately 5:00 p.m. on that date, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Traynham left the store and heard Temple calling out that he had been "hit." Trial Tr. at 294. When Traynham noticed that Temple was bleeding, Traynham drove him to a nearby hospital to be treated for his injuries, Trial Tr. at 296, which included a life-threatening gunshot wound to an artery in his right arm. Trial Tr. at 186-89.[FN2]

> **FN2.** The prosecution was unable to locate Temple prior to the date of Long's trial. Trial Tr. at 289.

Kenneth Kennedy, a Detective with the Albany Police Department, was assigned to perform a criminal investigation relating to the above-referenced shooting. After speaking with several individuals, Detective Kennedy began looking for Long so that he could question her about her activities on May 1, 1995. Trial Tr. at 325. When Long learned that the police were attempting to question her about the shooting, she contacted an attorney and thereafter surrendered to law enforcement agents. Trial Tr. at 438-39.

On October 13, 1995, an Albany County grand jury returned an indictment against Long. *See* Indictment No. 950631 ("Indictment"). In that accusatory instrument, Long was charged with one count of attempted murder, two counts of first degree assault, and two counts of second degree criminal possession of a weapon. *See* Indictment, Counts One through Five. Beginning on January 3, 1997, Long was tried before a jury on the foregoing charges in Albany County Court with County Court Judge Thomas A. Breslin presiding. After the parties presented their closing arguments and the court instructed the jury, the jury began its deliberations. Following several requests by the jury for the reading back of testimony and clarifications regarding the court's instructions, Trial Tr. at 634-52, the jury declared that it had reached a verdict in the case. In its verdict, the jury: i) acquitted Long of the attempted murder charge; ii) convicted her of both counts charging Long with first degree assault; iii) convicted her of the count charging Long with second degree criminal possession of a weapon (which related to victim Monell); and iv) acquitted her of the final count charging Long with second degree criminal possession of a weapon (which related to victim Temple). Trial Tr. at 652-55.

Prior to sentencing, Long's counsel filed a motion to set

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

aside the jury's guilty verdict pursuant to New York Criminal Procedure Law ("CPL"), Section 330.30 ("CPL § 330 Motion"). *See* Record on Appeal ("Record") at 133. In that application, defense counsel alleged that the convictions must be reversed because Parson was allowed to testify that she was shot by Long despite the fact that Long had never been charged with assaulting Parson. Record at 134. Counsel also claimed that there was insufficient evidence adduced at trial to establish that Temple was shot by Long. Record at 135. After hearing argument on that application, on February 21, 1997, the county court denied Long's CPL § 330 Motion in its entirety. Record at 119-24. That court then sentenced Long to consecutive, indeterminate terms of five to fifteen years imprisonment on each of the first degree assault convictions, and a lesser, concurrent term of imprisonment on the criminal possession of a weapon conviction. *See* Record at 130-31.

**\*3** Long appealed her convictions and sentences to the New York State Supreme Court, Appellate Division, Third Department. However, on November 25, 2000, prior to perfecting that appeal, Long filed a motion to vacate her sentence pursuant to CPL § 440.20. Record at 138. In that application, Long alleged that the consecutive sentences that had been imposed on her by the county court were illegal and contrary to her rights under both the federal and New York state constitutions. *See* Record at 139-44 ("CPL 440.20 Motion"). In support of that application, Long provided an affidavit of Temple-of whom Long had been convicted of assaulting-in which Temple declared that he could not identify the individual who shot him on May 1, 1995. Record at 145. Long's application was opposed by the District Attorney, Record at 146-47, and by Decision and Order dated January 25, 2001, Judge Breslin denied Long's CPL 440.20 Motion in its entirety. Record at 149-51 ("January, 2001 Order"). Long sought leave to appeal that decision to the Appellate Division, *see* Record at 152, and in its order dated April 20, 2001, the Third Department granted Long leave to appeal the

January, 2001 Order to the Appellate Division along with her direct appeal of her conviction. Record at 155.

With the assistance of counsel, Long argued in her direct appeal that: i) she was unduly prejudiced by Parson's testimony to the effect that she was shot by Long; ii) there was insufficient evidence adduced at trial to convict Long of the first degree assault of Temple; iii) she was denied her right to a fair trial due to the manner in which the trial court mischaracterized the allegations of one of the charges in the Indictment; iv) the jury's verdict was repugnant; and v) the sentences were unduly harsh and excessive. *See* Appellant's Brief on Appeal ("App.Br.") at 1-25. That appeal was opposed by the District Attorney in his brief dated December 14, 2001, and on February 28, 2002, the Third Department unanimously affirmed Long's convictions and sentences. *People v. Long,* 291 A.D.2d 720, 738 N.Y.S.2d 721 (3d Dept.2002). New York's Court of Appeals denied Long leave to appeal in its order dated June 17, 2002. *See People v. Long,* 98 N.Y.2d 677, 746 N.Y.S.2d 467, 774 N.E.2d 232 (2002).

B. *Proceedings in this Court*

Long commenced this proceeding, *pro se,* on April 14, 2003. *See* Petition (Dkt. No. 1). In that pleading, petitioner argues that: i) admission into evidence of an uncharged crime purportedly committed by Long deprived her of her right to a fair trial; ii) the trial court wrongfully denied Long's application to dismiss the third count in the Indictment; iii) the jury's verdict was repugnant; iv) the trial court misstated the factual allegations contained in the third count in the Indictment in its instructions to the jury; v) the sentence imposed was both harsh and excessive; vi) the imposition of consecutive sentences was both illegal and violative of Long's right against Double Jeopardy; and vii) the Appellate Division wrongfully refused to hear Long's appeal of the denial of her CPL 440.20 Motion.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

*See* Petition at ¶ 13. Long has also filed a memorandum of law in support of her petition. *See* Dkt. No. 2 ("Supporting Mem.").

**\*4** By Order dated April 24, 2003, the respondent was ordered to file a response to Long's petition. On June 20, 2003, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer together with a memorandum in opposition to Long's petition. Dkt. Nos. 8-9. In his opposing memorandum, respondent argues that Long is procedurally barred from asserting certain of the claims raised in her petition, and that none of Long's claims have merit. *See* Dkt. No. 9 ("Opp.Mem.").

## II. *DISCUSSION*

### A. *Procedurally Defaulted Claims*

This Court initially considers respondent's claim that Long has procedurally defaulted on her claims: i) which allege that she was denied her right to a fair because Parson was allowed to testify about an uncharged crime purportedly committed by Long; ii) that assert that the county court mischaracterized a charge contained in the Indictment; and iii) which contest both the legality and constitutionality of her sentences. *See* Opp. Mem. at 3-6.

### 1. *Admission of Evidence of an Uncharged Crime*

Petitioner's initial ground for relief is based upon Parson's trial testimony in which she suggested that she was shot by Long. *See* Petition, Ground A.

In her direct appeal, Long noted that the Indictment never charged her with committing any crime against Parson. *See* App. Br. at 3; *see also* Indictment. Prior to trial, defense counsel obtained a ruling from the county court that precluded Parson from testifying about the fact that she had been shot on May 1, 1995. *See* App. Br. at 5; *see also* Appellant's Appendix at A1. At trial, however, Parson testified that she was shot on that day in a manner which suggested that Long was the individual who had shot her. *See* Trial Tr. at 163-64. In addressing Long's appellate claim that the admission of that testimony constituted reversible error, the Third Department ruled that Long had "failed to object to Parson's testimony and, therefore, did not preserve this issue for appellate review." *Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721 (citing CPL § 470.05[2]) (other citation omitted).

A state court's determination that a claim was not preserved for appellate review is a finding of procedural default. *See Rivera v. Moscicki,* No. 03 CIV. 5810, 2005 WL 2347840, at \*3 (S.D.N.Y. Sept. 22, 2005); *Wilson v. Supt., Attica Corr. Facility,* No. 9:00-CV-767, 2003 WL 22765351, at \*3 (N.D.N.Y. Nov.24, 2003) (Sharpe, M.J.) (citations omitted), *adopted, Wilson v. Supt., Attica Corr. Facility,* slip op. at 2 (N.D.N.Y. Feb. 3, 2004) (Mordue, J.); *Betancourt v. Bennett,* No. 02-CV-3204, 2003 WL 23198756, at \*12 (E.D.N.Y. Nov.7, 2003). Therefore, Long has procedurally defaulted on her first ground for relief.

### 2. *Misstatement Regarding Count Three of the Indictment*

In her fourth ground seeking federal habeas intervention, Long argues that in its charge to the jury, the trial court mischaracterized the allegations contained in Count Three of the Indictment. Petition, Ground D. Specifically, she notes that such count alleged that Long shot Temple in his *chest* and right arm. *See* Indictment, Count Three

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

(emphasis added). In its charge to the jury, however, the trial court declared that this count alleged that Long had shot Temple in the right side of his *head* and in his right arm. *See* Trial Tr. at 617 (emphasis added). Long claims in this action, as she did in her direct appeal, that as a result of the foregoing she was deprived of her right to a fair trial. *See* Supporting Mem. at 16-18; App. Br. at 16-18.

**\*5** In addressing this appellate claim, the Appellate Division determined that Long had "failed to object to the court's charge and, therefore, that error has not been preserved for review (*see,* CPL 470.05[2] )." Since the Third Department explicitly determined that Long had failed to preserve this issue for appellate review, Long has procedurally defaulted on the fourth claim asserted in her petition.[FN3] *Rivera,* 2005 WL 2347840, at *3; *Wilson,* 2003 WL 22765351, at *3; *Betancourt,* 2003 WL 23198756, at *12.

> [FN3.] The Appellate Division's decision might be liberally read as one that alternatively addressed the merits of this claim. *See Long,* 291 A.D.2d at 723, 738 N.Y.S.2d 721 (after noting Long's procedural default on the claim relating to the county court's misreading of Count Three of the Indictment, the Third Department opined that "were we to address the issue, we would find it without merit since all other trial references to Temple's wound correctly characterized its nature").

> Even assuming, *arguendo,* that the above cited language may properly be characterized as an (alternative) decision addressing the merits of this claim, the undersigned notes that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as

an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *Glenn v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir.1996) (citing *Velasquez* ); *see also Olivo v. Thorton,* No. 05 CIV.3237, 2005 WL 3292542, at *8 (S.D.N.Y. Dec. 6, 2005); *Broome v. Coughlin,* 871 F.Supp. 132, 134 (N.D.N.Y.1994) (Kaplan, J., sitting by designation). Therefore, this Court deems Long to have procedurally defaulted on this ground.

3. *Claims Raised in CPL 440.20 Motion*

Long argued in her CPL 440.20 Motion, and similarly asserts in her sixth ground for relief herein, that the county court's imposition of consecutive sentences on Long was both illegal and contrary to her constitutional right to be free from Double Jeopardy. *See* Record at 139-44; Petition, Ground F.

As noted above, the Appellate Division granted Long permission to appeal the county court's January, 2001 Order denying Long's CPL 440 .20 Motion. *See* Record at 155. Long's appellate counsel did not, however, assert on appeal any claims that Long had raised in her CPL 440.20 Motion. *See* App. Br. at 4-25. In addressing this fact in the context of Long's appeal, the Third Department noted:

Although [Long] appeals from both the judgment of conviction and the order denying the CPL 440.20 motion, her failure to address any issues pertaining to the denial of her CPL 440.20 motion constitutes an abandonment of the appeal from that order. Accordingly, we address only the arguments raised on

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

the appeal from the judgment of conviction.

*Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721.

Where a petitioner abandons a claim at the appellate level, federal courts are to view such a claim as procedurally defaulted. *Delucia v. West,* No. 04 CIV. 3605, 2005 WL 1981708, at *4 (S.D.N .Y. Aug. 17, 2005) ("claims [that] may be considered abandoned ... result[ ] in a procedural default"); *Stephens v. Lacy,* 914 F.Supp. 44, 45 (E.D.N.Y.1996) (claims abandoned at the appellate level are procedurally defaulted). This Court accordingly finds that Long has procedurally defaulted on her sixth ground seeking federal habeas intervention.

B. *Consequences of Procedural Default*

A federal district court is precluded from reviewing a habeas claim if the state courts' rejection of that same claim rested on a state procedural bar. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000); *Marengo v. Conway,* 342 F.Supp.2d 222, 228 (S.D.N.Y.2004) (citations omitted). Thus, where the state court decision clearly and expressly indicates that its determination rests on a state procedural bar, a federal court may not review such claim when it is subsequently asserted in a federal habeas petition unless the petitioner demonstrates both good cause for and actual prejudice resulting from the noncompliance with the state's procedural rule. *Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 809 (2d Cir.2000); *Livingston v. Herbert,* No. 00-CV-1698, 2002 WL 59383, at *2 (N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), *adopted,* No. 00-CV-1698, docket no. 20 (N.D.N.Y. Jan. 24, 2002) (Kahn, J.), *appeal dismissed,* No. 02-2083, slip op. at 1 (2d Cir. Aug. 28, 2002) (unpublished). Additionally,

review of procedurally defaulted claims is available where the petitioner demonstrates that a fundamental miscarriage of justice would occur absent federal court review.[FN4] *Dixon,* 293 F.3d at 80; *Morales v. Greiner,* No. CV-98-6284, 2005 WL 1009545, at *8 (E.D.N.Y. May 2, 2005).

> FN4. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002).

**\*6** For this Court to excuse Long's procedural default under the "cause and prejudice" exception which permits federal review of procedurally barred claims, she must first establish "cause" for her default. *E.g., St. Helen v. Senkowski,* 374 F.3d 181, 184 (2d Cir.2004) (citation omitted), *cert. denied,* 543 U.S. 1058, 125 S.Ct. 871, 160 L.Ed.2d 785 (2005); *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). To establish such cause, a petitioner must show that "some objective external factor impeded [her] ability to comply with the relevant procedural rule." *Wilson,* 2003 WL 22765351, at *3 (citing *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Restrepo v. Kelly,* 178 F.3d 634, 638 (2d Cir.1999)). Examples of such "external factors" include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's trial or on direct appeal. *Wilson,* 2003 WL 22765351, at *3 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)); *see Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (citing *Murray* ); *United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1992).

In the present action, Long has not offered any cause for her failure to preserve the above-referenced procedurally

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

defaulted claims-all of which were based upon matters contained in the record-for review in her direct appeal of her conviction. Significantly, Long has never asserted, in the state courts or this action, that her trial counsel rendered ineffective assistance by his failure to object to either Parson's trial testimony or the manner in which the trial court described the allegations contained in the third count in the Indictment to the jury during the county court's instructions.[FN5] Nor has Long ever argued that her appellate counsel rendered ineffective assistance by failing to raise any of the claims Long asserted in her CPL 440.20 Motion on appeal.

FN5. Long was represented by Eugene Grenz, Eq. at her criminal trial, and by Theresa M. Suozzi, Esq. on appeal.

Since Long has not established cause for her procedural default concerning these claims, this Court need not decide whether she suffered prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally barred claims unless *both* cause and prejudice is demonstrated.[FN6] *See Stepney,* 760 F.2d at 45; *D'Alessandro v. Fischer,* No. 01 CIV. 2551, 2005 WL 3159674, at *9 n. 10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney* ); *Moore v. Greiner,* No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct.19, 2005) (citing *Stepney* ); *Lutes v. Ricks,* No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing *Stepney* and *Jones v. Barkley,* No. 9:99-CV-1344, 2004 WL 437468, at *9 (N.D.N.Y. Feb.27, 2004) (Sharpe, J.) (collecting cases)); *Pou v. Keane,* 977 F.Supp. 577, 581 (N.D.N.Y.1997) (Kahn, J.).

FN6. The petitioner bears the burden of

demonstrating cause for her procedural default and resulting prejudice. *See Simpson v. Portuondo,* 01CIV.8744,2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

**\*7** The finding that Long has failed to establish cause for her procedural default does not necessarily preclude this Court from considering her procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly invoke habeas review as to such claims if the court is convinced of the petitioner's actual innocence. On this question, the Second Circuit has observed that:

The Supreme Court has explained that the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo,* 513 U.S. 298, 321-22, 115 S.Ct. 851, 130 L.Ed.2d 808 ... (1995). " "[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 ... (1998). "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him." ' *Id.* (citing *Schlup, 513 U.S.* [at] 327-28 ... (some internal citation marks omitted)).

*Sweet v. Bennett,* 353 F.3d 135, 142 (2d Cir.2003); *see also D'Alessandro,* 2005 WL 3159674, at *8; *Marengo,* 342 F.Supp.2d at 228. Thus, in considering whether a petitioner's procedural default may be excused under this "actual innocence" exception, federal courts are to consider the sufficiency of the evidence offered against the petitioner at his or her trial. *Dixon,* 293 F.3d at 81.

Considering first Long's convictions for the crimes of first

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

degree assault, this Court notes that "New York Penal Law § 120.10(1) provides that a person is guilty of first degree assault when, '[w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument." ' *Jackson v. Lacy,* 74 F.Supp.2d 173, 178 (N.D.N.Y.1999)* (McAvoy, C.J.).

With respect to Long's assault conviction relating to Monell, the trial transcript reflects that soon after Monell observed Long firing her weapon at Parson, Monell heard Parson's friend, Charlene Gause, directing Parson to shoot Monell.[FN7] Trial Tr. at 165. Soon thereafter, Monell discovered that she had been shot. Trial Tr. at 165-66. Additionally, a forensic detective with the Albany Police Department testified that the location of seven shell casings found at the crime scene was consistent with having been fired from the area where Long was observed standing by Monell and Parson. Trial Tr. at 270-77. The foregoing evidence amply supported the jury's finding that Long was guilty of the first degree assault of Monell.[FN8]

> **FN7.** Monell testified that on the date of the shooting, she inquired of Gause why she was asking Long to shoot Monell, however Gause responded by stating: "You better back up, you better back up." Trial Tr. at 165.

> **FN8.** Long never claimed in the state courts that the evidence at trial was insufficient to establish her guilt of the assault charge relating to Monell. *See* App. Br. In fact, at trial, Long's defense counsel conceded that there was "a factual basis to send that [charge] to the jury." Trial Tr. at 350-51.

As to Long's conviction on the first degree assault relating to Temple, after reviewing the relevant trial testimony relating to this charge, this Court adopts the Appellate Division's determination that the trial testimony "provided a valid line of reasoning and permissible inferences from which any rational trier of fact could find [Long] guilty beyond a reasonable doubt of all the essential elements of the crime of assault in the first degree" as to Temple. *See Long,* 291 A.D.2d at 722, 738 N.Y.S.2d 721.[FN9]

> **FN9.** This Court discusses in more detail the evidence adduced at trial relating to Long's conviction on the assault of Temple *infra* in conjunction with Long's habeas challenge relating to the trial court's failure to grant her motion to dismiss the count in the Indictment accusing petitioner of that crime.

**\*8** Turning to Long's conviction of second degree criminal possession of a weapon in conjunction with her assault on Monell, the Court notes that in New York, a person is guilty of that crime when, with the intent to use a weapon unlawfully against another, a person "possesses a loaded firearm." *See* New York Penal L. § 265.03. The evidence adduced at trial was more than sufficient to establish that on May 1, 1995, Long possessed a loaded firearm which she intended to use unlawfully with respect to Monell. *See, e.g.,* Trial Tr. at 134, 164-66.

In sum, after carefully considering this issue, this Court concludes that petitioner has failed to meet her burden of proving that she is actually innocent of any of the crimes of which she was convicted.[FN10] Therefore, this Court finds no basis to overlook Long's procedural default regarding the above-referenced claims, and accordingly denies her first, fourth and sixth grounds for relief (delineated by petitioner as Grounds "A," "D," and "F," respectively) as procedurally forfeited. *See, e.g., Lutes,* 2005 WL 2180467, at \*9; *Ayuso v. Artuz,* No. 99 CIV 12015, 2001

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

WL 246437, at *8-9 (S.D.N.Y. Mar.7, 2001); *DeLeon v. Hanslmaier,* No. CV-94-5512, 1996 WL 31232, at *3-4 (E.D.N.Y. Jan.19, 1996), *aff'd,* 104 F.3d 355 (2d Cir.1996).

> FN10. The petitioner bears the burden of proving actual innocence where he or she seeks federal review of procedurally defaulted habeas claims. *E.g., Speringo v. McLaughlin,* 202 F.Supp.2d 178, 189 (S.D.N.Y.2002).

**C.** *Remaining Claims*

**1.** *Standard of Review*

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. Under the AEDPA, a federal court cannot grant habeas relief to a state prisoner on a claim:

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003); *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry,* 403 F.3d at 66; *Boyette,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court can grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

**\*9** *Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 108-09 (2d Cir.2000)).

In *Sellan v. Kuhlman,* 261 F.3d 303, 309-10 (2d Cir.2001), the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim. Specifically, that court held that deference is

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

required if the claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law. *Sellan,* 261 F.3d at 311-12. As the Second Circuit explained, the plain meaning of § 2254(d)(1) dictates that:

[f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim-*even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."*

*Sellan,* 261 F.3d at 312 (emphasis added), *see also Ryan v. Miller,* 303 F.3d 231, 246 (2d Cir.2002). When a state court's decision is found to be decided "on the merits," that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal court engaged in habeas review is to determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable." *Williams,* 529 U.S. at 409; *see also Sellan,* 261 F.3d at 315. The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error," though "the increment need not be great[.]" *Francis S.,* 221 F.3d at 111.

2. *Substance of Long's Remaining Claims*

A. *Motion to Dismiss Indictment*

In her second ground for relief, Long argues that the trial court wrongfully failed to dismiss the third count in the Indictment despite the fact that insufficient evidence was adduced at trial establishing her guilt of that charge. *See* Petition, Ground B; Supporting Mem. at 7-10; *see also* Indictment, Count Three; App. Br. at 7-10.

At the close of the prosecution's proof, Long's counsel moved pursuant to CPL § 290.10 to dismiss, *inter alia,* Count Three of the Indictment, which accused Long of the first degree assault of Temple.[FN11] *See* Trial Tr. 351. The county court denied that application, concluding that there existed a sufficient factual basis to submit that Count to the jury for its consideration. Trial Tr. at 352.

FN11. That procedure under the CPL, which is now referred to as a request for a trial order of dismissal, is derived from the prior practice utilized to secure the same result-the directed verdict of acquittal. *Faux v. Jones,* 728 F.Supp. 903, 907 (W.D.N.Y.1990) (citing CPL § 290.10).

**\*10** A motion under CPL § 290.10 must be denied where the trial evidence, when viewed in a light most favorable to the prosecution, is legally sufficient to support a guilty verdict. *People v. Phillips,* 256 A.D.2d 733, 734-35, 682 N.Y.S.2d 685 (3d Dept.1998) (citation omitted). A claim based upon a trial court's failure to dismiss a charge in an indictment is properly considered a challenge to the sufficiency of evidence relating to such charge. *See Gwathney v. Sabourin,* 269 F.Supp.2d 63, 66 (E.D.N.Y.2003); *Phillips,* 256 A.D.2d at 734-35, 682 N.Y.S.2d 685 (citation omitted). Accordingly, federal courts considering habeas claims premised upon a trial

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

court's failure to dismiss one or more counts in an indictment must determine whether the state court's decision denying the motion to dismiss is contrary to, or involved an unreasonable application of, Supreme Court case law governing evidence sufficiency claims. *E.g., Ubrich v. Murphy,* No. 98-CV-0655, slip op. at 41 (N.D.N.Y. Apr. 4, 2003) (Peebles, M.J.), *adopted,* No. 98-CV-0655, Dkt. No. 28, slip op. at 2 (N.D.N.Y. May 13, 2003) (Scullin, C.J.).

i. *Clearly Established Supreme Court Precedent*

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he or she is charged. *See Fiore v. White,* 531 U.S. 225, 228-29, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001); *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A habeas petitioner claiming that there was insufficient evidence supporting a challenged conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see also Schlup,* 513 U.S. at 323 n. 38; *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citations omitted). Moreover, in reviewing the record, the court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319.

ii. *Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent*

The trial evidence established that on May 1, 1995, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Around that same time, both Parson and Monell observed Long near the TC Club brandishing a gun. Trial Tr. at 132, 163-64. Long was observed firing the weapon at Parson, Trial Tr. at 163-64, and around that same time Temple, who was near the TC Club on that date, sustained a life-threatening gunshot wound. Trial Tr. at 188-89, 294. Additionally, seven 9 mm shell casings were found in the area where Long was observed by Monell and Parson holding a gun, Trial Tr. at 270-77, evidence which strongly suggested that Long fired her weapon multiple times. The foregoing evidence, viewed collectively, is more than sufficient to surpass the relatively modest hurdle imposed by *Jackson* with respect to Long's conviction on the first degree assault charge relating to Temple. Therefore, this Court concludes that Long has not demonstrated that the Appellate Division's decision denying the aspect of her appeal which challenged the denial of her motion to dismiss the third count in the Indictment due to evidence insufficiency, *see Long,* 291 A.D.2d at 721-22, 738 N.Y.S.2d 721, is either contrary to, or involves an unreasonable application of, *Jackson* and its progeny. This Court accordingly denies her second ground for relief.

B. *Repugnant / Inconsistent Verdict*

**\*11** As noted above, the jury acquitted Long of the attempted murder charge relating to Monell (Count One), as well as the weapons possession charge which accused her of possessing a firearm and intending to use same unlawfully as to Temple (Count Five). *See* Trial Tr. at

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

652-55.

Long argues in this proceeding, as she did in state court, that the jury's verdict is repugnant because she was acquitted of the charge which accused Long of criminally possessing a weapon but convicted of the assault charge as to Temple, which required, *inter alia,* a finding by the jury that Long used a firearm in conjunction with such assault. *See* Petition, Ground C; Supporting Mem. at 11-15; *see also* App. Br. at 11-15; Indictment, Counts Three, Five.

i. *Clearly Established Supreme Court Precedent*

In *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the Supreme Court opined that:

The most that can be said in [ ] cases [in which the jury renders an inconsistent verdict] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

*Dunn,* 284 U.S. at 393 (internal quotation and citation omitted); *see also Powell,* 469 U.S. at 64-65 (quoting *Dunn* ). Since the Government is unable to seek review of the portion of the verdict that acquits a defendant due to the Double Jeopardy Clause of the United States Constitution, it is "unclear whose ox has been gored" by an inconsistent verdict. *Powell,* 469 U.S. at 65-66 (footnote omitted). Consequently, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at 65-66; *Bradshaw v. Stumpf,* 545 U.S. 175, 125 S.Ct. 2398, 2409, 162 L.Ed.2d 143 (2005) ("inconsistent jury verdicts may be enforced") (citing *Powell, Dunn* ) (Souter and Ginsburg, concurring); *Dowling v. United States,* 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ("inconsistent verdicts are constitutionally tolerable") (citation omitted); *Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside").

ii. *Contrary To, or Unreasonable Application of, Supreme Court Precedent*

In denying Long's appellate claim relating to the alleged inconsistency of the jury's verdict, the Appellate Division opined:

Defendant reasons that she cannot be guilty of shooting Temple if the jury also determined that she did not possess a gun. However, it is equally possible that the verdict resulted from the jury's assessment that, although she possessed a loaded handgun, she did not have the intent to use it unlawfully against Temple (*see,* Penal Law § 265.03[2] ). The jury could have determined that she acted recklessly by creating a grave risk of death to Temple causing serious physical injury (*see,* Penal Law § 120.10[3] ). Therefore, "[t]he acquittal of the former ... did not negate [any] elements of the latter [.]" Where, as here, a rational theory exists to support each verdict, the jury's determination will not be disturbed.

**\*12** *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721 (citation to case law omitted). Thus, the Third Department found that the jury's verdict was not, in fact, inconsistent.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Since the present habeas claim is rooted in the assumption that the jury's verdict was repugnant, *see* Petition, Ground C, this Court initially considers whether the verdict was, in fact, inconsistent.

In instructing the jury on the first degree assault charge relating to Monell, the trial court charged the jury that the prosecution was required to establish that on or about May 1, 1995, Long, "did, with intent to cause serious physical injury to another person, cause[ ] such injury to such person ... by means of a deadly weapon." Trial Tr. at 613-14. In sharp contrast to that charge, when instructing the jury as to the first degree assault charge relating to Temple, the county court instructed the jury that the prosecution was required to establish that on or about May 1, 1995, "under circumstances evincing a depraved indifference to human life, [Long] recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused serious physical injury to another person." Trial Tr. at 616-17. Thus, unlike the assault charge relating to Monell, the jury was *not* required to find that Long *intended* to cause serious physical injury to Temple in considering whether she was guilty of that assault charge. Both weapons possession charges, however, required the jury to find, *inter alia,* that Long possessed a firearm *with the intent to use that weapon unlawfully. See* Trial Tr. at 622, 624 (weapons possession charge relating to Monell); Trial Tr. at 626-28 (weapons possession charge relating to Temple). Thus, unlike the assault charge relating to Temple, the jury was instructed that it could *only* find Long guilty of the weapons possession charge relating to that victim if it found, *inter alia,* that: "she possessed [a loaded pistol] *with intent to use it unlawfully against ... Robert Temple."* Trial Tr. at 627.

Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." CPL § 300.30(5). "Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." *People v. Loughlin,* 76 N.Y.2d 804, 806, 559 N.Y.S.2d 962, 559 N.E.2d 656 (1990) (citing *People v. Tucker,* 55 N.Y.2d 1, 6-7, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981)).

In the state court matter below, the Appellate Division determined that the jury could have properly found both: i) that Long acted recklessly when she shot Temple, thereby creating a grave risk of death to him and causing him serious physical injury; and ii) that although Long possessed a loaded handgun on May 1, 1995, she did not *intend* to use it unlawfully against Temple. [FN12] *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721. This Court agrees with the Third Department's determination that the jury's verdict was in no way inconsistent or repugnant. Thus, Long cannot prevail on her third ground for relief, which is premised upon the assumption that the jury's verdict was inconsistent.

> [FN12.] Unlike the evidence adduced at trial regarding shooting victim Monell, the testimony adduced at trial established that Temple merely happened to be a bystander near the TC Club at the time Long fired her weapon. Trial Tr. at 293-94.

**\*13** Additionally, as noted above, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at 65-66. Since an allegedly inconsistent verdict is not a sufficient reason for setting it aside, *Harris,* 454 U.S. at 345, the Appellate Division's decision denying this aspect of Long's appeal is neither contrary to, nor an unreasonable application of, the above-referenced

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Supreme Court authority. Therefore, for this reason as well, this Court must deny Long's third ground for relief. *E.g., Brunson v. Tracy,* 378 F.Supp.2d 100, 110 (E.D.N.Y.2005) ("[i]t is well-settled that federal habeas relief is unavailable for inconsistent verdicts") (citations omitted); *Vassell v. McGinnis,* No. 04-CV-0856, 2004 WL 3088666, at *6 (E.D .N.Y. Dec. 22, 2004); *Muldrow v. Herbert,* 299 F.Supp.2d 166, 170 (W.D.N.Y. Feb.3, 2004) ("an allegedly inconsistent verdict does not present a constitutional violation. Therefore, such a claim is not even cognizable on habeas review"), *appeal dismissed,* No. 04-1839pr (2d Cir. Jan. 20, 2005).

C. *Harsh and Excessive Sentence*

In her fifth claim, Long alleges that in light of her age, background, familial obligations and lack of criminal history, the sentence imposed on her was harsh and excessive.[FN13] Petition, Ground E. She further alleges that the sentences "violate[ ] New York State and Federal Sentencing Guidelines." Petition, Ground E.

> FN13. This claim was asserted by Long in her direct appeal. *See* App. Br. at 20-24.

These claims, however, fail to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citing *Underwood v. Kelly,* 692 F.Supp. 146 (E.D.N.Y.1988), *aff'd mem.,* 875 F.2d 857 (2d Cir.1989)); *see also Brown v. Donnelly,* 371 F.Supp.2d 332, 343-44 (W.D.N.Y.2005); *Jackson,* 74 F.Supp.2d at 181 ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law"). Although petitioner now claims that the sentences imposed on her were illegal, *see* Petition, Ground E, the Court notes that

in Long's direct appeal, appellate counsel explicitly acknowledged that the sentences imposed on her client were authorized by New York law. *See, e.g.,* App. Br. at 20 (counsel conceding that the imposed sentences were "authorized by law").

Moreover, the Court's review of Long's sentences establishes that the imposed sentences were consistent with New York Penal Law. For example, Long was sentenced to terms of five to fifteen years imprisonment on each of her first degree assault convictions. *See* Record at 130-31. The Appellate Division has specifically noted that such a sentence for a conviction of that crime is "within permissible statutory ranges" in New York. *See People v. Duncan,* 279 A.D.2d 887, 889, 720 N.Y.S.2d 578 (3d Dep't), *leave denied,* 96 N.Y.2d 828, 729 N.Y.S.2d 448, 754 N.E.2d 208 (2001). Similarly, Long's sentence of five to fifteen years imprisonment on her weapons possession conviction, Record at 131, has been explicitly acknowledged as authorized under New York law. *See People v. Rodriguez,* 276 A.D.2d 326, 326-27, 714 N.Y.S.2d 267 (1st Dep't 2000), *leave denied, People v. Rodriguez,* 96 N.Y.2d 738, 722 N.Y.S.2d 805, 745 N.E.2d 1028 (2001).[FN14]

> FN14. As to Long's claim relating to the United States Sentencing Guidelines, *see* Petition, Ground E, the Court finds that Long has not articulated how the United States Sentencing Guidelines are germane, in any way, to her convictions, which arose out of state court prosecutions based upon Long's violation of New York's penal laws.

**\*14** With respect to the consecutive nature of the sentences imposed on Long regarding the first degree assault convictions,[FN15] this Court notes that the discretionary power of trial courts in New York "includes

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

the ability to impose consecutive penalties for multiple crimes." *People v. Ramirez,* 89 N.Y.2d 444, 450, 654 N.Y.S.2d 998, 677 N.E.2d 722 (1996) (citing *Matter of Walker v. Walker,* 86 N.Y.2d 624, 629, 635 N.Y.S.2d 152, 658 N.E.2d 1025 (1995)) (other citation omitted). "[E]ven if the statutory elements of multiple offenses overlap, sentences may be imposed to run consecutively when multiple offenses are committed through separate and distinct acts, though they are part of a single transaction." *Ramirez,* 89 N.Y.2d at 451, 654 N.Y.S.2d 998, 677 N.E.2d 722 (citing *People v. Laureano,* 87 N.Y.2d 640, 643, 642 N.Y.S.2d 150, 664 N.E.2d 1212 (1996)) (other citation omitted).

> FN15. The trial court imposed consecutive sentences with respect to the assault convictions; the sentence on the weapons possession conviction was ordered to run concurrent with the other sentences imposed by the county court. Record at 130-31.

Long's assault on two different victims-Monell and Temple-clearly constitutes separate acts which permitted the county court to impose consecutive sentences. *See DeSordi v. Walker,* No. 98-CV-1351, slip op at 31-32 (N.D.N.Y. Mar. 7, 2002) (Sharpe, M.J.) ("the stabbing of separate victims clearly constituted separate acts, [rendering permissible] the imposition of consecutive sentences") (citations omitted), *adopted DeSordi v. Walker,* No. 98-CV-1351 (N.D.N.Y. July 30, 2002) (Kahn, J.), *aff'd,* 84 Fed.Appx. 160 (2d Cir. Jan.12, 2004), *cert. denied sub nom. DeSordi v. Burge,* 543 U.S. 811, 125 S.Ct. 44, 160 L.Ed.2d 15 (2004). Thus, the sentences imposed on Long, including the consecutive nature of some of those sentences, are clearly permitted by state law.

Arguably, this ground could be construed as a claim that

the imposed sentences constitute a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U.S. at 272; *see Harmelin v. Michigan,* 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Eighth Amendment only forbids sentences which are "grossly disproportionate" to the crime). Sentences of imprisonment that are within the limits of valid state statutes are simply not cruel and unusual punishment in the constitutional sense. *Brumfield v. Stinson,* 297 F.Supp.2d 607, 622 (W.D.N.Y.2003) (citing *Thompson v. Lord,* No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.)) (other citations omitted) [, *adopted, Thompson v. Lord,* No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.) ].

Long has not provided anything in support of her petition which suggests that either the terms of imprisonment or consecutive nature of the sentences imposed on her is "grossly disproportionate" to her crimes. *E.g., Harmelin,* 501 U.S. at 995. This Court therefore finds no basis upon which it may properly find that Long is entitled to habeas relief due to the sentences she received as a consequence of her convictions and accordingly denies ground E in her petition.

D. *Failure to Consider Appeal of Denial of CPL 440.20 Motion*

**\*15** In her seventh and final ground, petitioner argues that although the Third Department granted her leave to appeal the denial of her CPL 440.20 Motion, that court nevertheless "refused to hear [s]aid motion" in violation of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

her constitutional rights. *See* Petition, Ground "G." [FN16]

> FN16. In her seventh ground for relief, Long also refers to a "reconsideration motion." *See* Petition, Ground G. None of the state court records provided to this Court reflect any motion for reconsideration. Thus, it appears as though Long's reference to a "reconsideration motion" merely constitutes a typographical error on the part of petitioner.

This claim appears to allege that the Third Department wrongfully determined that Long failed to assert any appellate claim relating to her CPL 440.20 Motion and had therefore abandoned those claims. *See Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721. Therefore, this Court briefly reviews Long's CPL 440.20 Motion, together with the claims raised in her appellate brief, in order to ascertain whether the Third Department's determination that Long abandoned any appellate claim relating to the denial of her CPL 440.20 Motion is supported by the record.

Long's CPL 440.20 Motion alleged that the county court's imposition of consecutive sentences violated: i) the provisions of both the federal and New York State constitutions which prohibit individuals from being placed in Double Jeopardy; and ii) New York's Penal Law which addresses the issue of when a trial court may properly impose consecutive sentences. *See* CPL 440.20 Motion. Although Long's appellate brief made one brief reference to the CPL 440.20 Motion filed by Long, *see* App. Br. at 21, that brief never referred to any of the arguments asserted in the CPL 440.20 Motion. Nor did that brief incorporate by reference any of the claims asserted in that motion. *See* App. Br. Thus, the appellate brief never asserted as a basis for relief any claim that the sentences imposed on Long violated the Double Jeopardy clauses of

either the state or federal constitutions, or which argued that the consecutive nature of the sentences rendered them illegal under New York law. [FN17] *See* App. Br. Rather, the portion of the appellate brief which challenged the sentences imposed on Long was limited to an argument that the sentences were harsh and excessive. *See* App. Br. at 20-24.

> FN17. As noted *ante* by this Court in addressing Long's claim that the imposed sentences were harsh and excessive, appellate counsel *conceded* in her brief that the sentences imposed by the trial court were "authorized by law." *See* App. Br. at 20.

The foregoing conclusively establishes that although Long was afforded the opportunity to challenge the denial of her CPL 440.20 Motion on appeal, appellate counsel chose, apparently for strategic reasons, to refrain from asserting any claims relating to the denial of that motion in counsel's direct appeal of Long's conviction. Thus, to the extent Long now seeks federal habeas relief based upon a claim that the Appellate Division erred in either: i) concluding that Long failed to assert any of the claims raised by her in her CPL 440.20 Motion on appeal; or ii) deeming Long to have abandoned those claims, this Court finds such claims to be contradicted by the record and entirely without merit.

### III. *CONCLUSION*

After carefully considering all of the submissions before the Court, the undersigned concludes that Long has procedurally defaulted on her claims which allege that: i) she was denied her right to a fair because testimony relating to an uncharged crime was admitted into evidence against her at trial; ii) the trial court mischaracterized the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

allegations asserted against her in Count Three of the Indictment; and iii) her sentences are illegal and violative of both the federal and New York state constitutions. Since petitioner has not established cause for her procedural default concerning such claims or that she is actually innocent of any of the crimes of which she stands convicted, this Court denies those claims as procedurally barred. Furthermore, after considering the remaining grounds raised by Long in her petition, this Court finds that such claims lack merit and do not afford Long a basis for federal habeas relief. Thus, those claims are denied on the merits.

**\*16** IT IS THEREFORE HEREBY

ORDERED, that Long's habeas petition (Dkt. No. 1) is DENIED and DISMISSED, and it is further

ORDERED, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by regular or electronic mail, and it is further

ORDERED, that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

IT IS SO ORDERED.

N.D.N.Y.,2006.
Long v. Lord
Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.